## John Wells and William Miller, *vs.* The Canton Company, William Winn and James Ross.

The lien of a mechanic, under the lien laws of this State, upon buildings for work and materials, attaches as soon as the house is begun, and machines being made by those laws subject to lien in like manner as buildings are, the lien upon a machine commences, at least, as soon as the mechanic begins to put it up.

These laws give a preference to the mechanic's lien over all liens or incumbrances attaching subsequently to the commencement of the building, or the putting up of the machine.

A claim for lien was filed in the county court against certain machinery in a factory, and a *scire facias* issued thereon. Subsequently this lien suit was by agreement stricken off, and the claim filed in a chancery suit, in which the whole property, consisting of the factory and all the machinery in it was sold by a trustee *en masse*, free of all incumbrances, notice, however, the lien of claim having been given to the trustee at the time of sale. Held:

That under such circumstances the mechanic had, upon general principles of equity, the right to demand satisfaction for his claim out of the proceeds of sale.

The fact that the whole property, including the machinery, was sold *en masse* for a gross sum is not a fatal objection to the claim for lien. The relative value of the machinery may be ascertained by proof on the subject.

APPEAL from the court of chancery.

The appellants, Wells and Miller, machinists, put up certain machines in the adamantine candle factory of Hancock and Mann, between the 7th of April and 18th of June 1846. These machines consisted principally of four presses and heaters, essential to the business of the factory. On the 21st

of August 1846, they filed in Baltimore county court their claim, to the amount of $815.37½, for lien, under the mechanics lien laws, against said machines, and on the same day caused a *scire facias* to be issued thereon. This claim was afterwards, on the 26th of March 1847, filed in the case of *Samuel Jones vs. Hancock and Mann,* (a suit previously instituted in chancery,) under the following agreement of counsel in the case.

"*Wells and Miller, vs. Hancock and Mann,* in Baltimore county court. It is agreed, that the claim for lien in this case be filed in the case of *Jones vs. Hancock and Mann,* and be considered as if the proceeding had not been instituted in this court. No issue will be required to prove any fact connected with the claim, but the claim to be sustained in the usual way by affidavit, the costs taxed in this case to follow the claim and this suit to be off."

The decree in the case of *Jones vs. Hancock and Mann* was passed on the 29th of July 1846, and the property, consisting of said factory and all its machinery, was sold thereunder, on the 15th of February 1847, the trustees stating in their report that they sold the same free of all incumbrances, and this sale was finally ratified by the chancellor on the 14th of June 1847. The claims upon which this decree was passed are fully stated in the opinion of this court. Notice was given to the trustee at the time of the sale, of the claim of the appellants, and the sale was made after such notice was given. The auditor then made his report, and stated an account in which he refused to allow the claim of the appellants, who excepted thereto on that account, but the chancellor, (JOHNSON,) on the 14th of December 1847, passed an order ratifying the account, and refused to allow said claim. Accompanying this order he delivered an opinion which is reported in *1 Md. Chancery Decisions,* 187.

This order was subsequently opened by consent, and the appellants were permitted to give further evidence relative to their claim. Evidence was then taken, showing that the property in question sold for $20,500, of which $10,000 was in

machinery, and that the machinery put up by the appellants was one-twentieth of the whole machinery sold, and that these machines were not fixtures.   But the Chancellor again, on the 4th of December 1849, passed an order disallowing the claim of the appellants, from which, as well as from all previous orders to the same effect, they appealed.

The cause was argued before ECCLESTON, MASON and TUCK, J.

*Wm. J. Ward* for the appellants.

1st.  The appellants' claim is for the construction and erection of machinery, and was filed properly and in due time. The act of 1838, ch. 205, sec. 9, requires the claim to be filed within thirty days, but this period is extended to sixty days by the act of 1845, ch. 176, sec. 1.

2nd.  The appellants were entitled to have this lien right enforced against the proceeds of the judicial sale made in this case.   The act of 1845, ch. 176, sec. 4, first gave the lien on machines and put them on the same footing as houses.   The act of 1845, ch. 287, sec. 4, first speaks of judicial sales, the original act of 1838, ch. 205, sec. 8, using the term "execution."   It is contended on the other side, that the act of 1845, ch. 287, sec. 4, applies only to sales of houses and not to machinery, but this is not so—these facts are to be construed in *pari materia*, and machinery is put on the same ground as buildings.   But then the agreement of counsel obviates all difficulty on this point.   But again, upon general principles of equity apart from the statutes, the appellants have the right to the application of these proceeds to their claim, the attaching of the lien on the specific machines being admitted.

3rd.  If even the machines had been made fixtures or had been attached to the freehold, the lien under the act which acknowledges machines as subject of liens *distinct from the building*, would be as complete as if they were detached and movable chattels.   But they are shown not to be fixtures, and their value has been ascertained by the evidence in the cause.

4th. The remaining question is, whether this claim is a preference over the mortgages? After satisfaction of the vendor's lien there was enough to satisfy our claim, provided it be a preference over the mortgages. The first mortgage is dated July 31st, 1845, and was recorded on the 10th of June 1846, and so far as it has reference to personalty is not recorded in time under the act of 1729, ch. 8, sec. 5. The second is dated the 11th of April 1846, and was recorded 16th of June 1846. This was not in time for personalty, and the machines were not then put up, and could not pass under it. 46 *Eng. Com. Law Rep.*, 245, 384. 4 *No. New York Legal Observer*, 129. The third mortgage was dated the 16th of June 1846, and was recorded in due time, but the act of 1845, ch. 287, sec. 7, makes the lien a preference to mortgages recorded since the *commencement of the building*, so also as to every mortgage made after the commencement of the construction of the machinery. The commencement of the building of a house is the first labor done on the ground which is made the foundation of the building. 5 *Rawle*, 295. A like construction would require, as to a machine, a reference to the first work suitable and necessary for its construction, which in this case was done on the 7th of April 1846, long prior to the date of the third mortgage. Again, the act of 1845, ch. 287, sec. 1, says that a liberal construction shall be given to these acts—they are all to be construed together as one act.

*Grafton L. Dulany* for the appellees.

There were three mortgages under which the property was sold, *en masse*, and so sold without distinction or discrimination. So far as the rights of the appellants are concerned they are to be determined by the acts of Assembly, and the questions are:—1st. Whether under the lien laws there was any lien on the machinery? And 2nd. Whether, supposing the lien to exist, it followed the proceeds into chancery?

1st. The 4th sec. of the act of 1845, ch. 176, gives a lien upon machinery in the same manner as by the original act

there was a lien on the building. The original act of 1838, ch. 205, sec. 1, prescribes the mode of laying the lien, and sec. 8 gives the right to settle the priorities in case of sale. The value of the thing was to be ascertained by a sale, which has not been done in this case. Here the entire property was sold, the machinery as part of it; the sale of the machinery was not made under the lien law, nor by the trustee as separate property, but under the mortgages and claimed by the mortgagees, and there is no evidence to show how much of the proceeds represented distinctly this machinery.

2nd. The act of 1845, ch. 287, sec. 4, applies to *buildings;* no mention whatever is made of machinery as distinct from the building, and no authority is given to follow the proceeds into the hands of judicial officers. The distinction between buildings and machinery has been clearly made, and the parties must take the grant as it is given. The property must pass, if at all, under the term *building*, and the proof is that the machinery here was no part of the building. The agreement does not at all enlarge the operation of this law in favor of the appellants, for the mortgagees gave up and surrendered nothing by it.

3rd. But it is contended that the mortgages never embraced this property at all, and therefore the trustee had no right to dispose of it. But suppose the trustee had no right to sell this machinery, a different proceeding is indispensably necessary, under the statute, before the appellants can claim the proceeds. They must show what the proceeds are which they claim. If they meant to allege that their property was wrongfully sold and mingled with other so as to be undistinguishable, an entirely different proceeding should have been instituted; in such a case the principle is that they should have the whole amount, and if the facts do not present such a case they are without remedy. But again, the lien is good only as against subsequent incumbrances, and here there were prior mortgages, the validity of which had been tried and determined.

*Charles F. Mayer*, for the appellants, in reply.

We are told, no matter how clearly the law may give us a claim to the property, yet if it has been sold, our claim to the proceeds is gone. This is not so; we have a right to pursue the proceeds in equity, as in admiralty, wherever they can be distinctly traced. 5 *Peters*, 710. The doctrine, that because the property has been sold, and we cannot discriminate the proceeds of ours, and therefore we are entitled to none, is monstrous and is not supported by the facts of the case, for there is evidence from which the value of it can be ascertained with sufficient accuracy and clearness. The trustee ought to have sold the property separately. It was his fault, not ours, that he did not. We could not interfere by writ of replevin to take it from the trustee. We did what we could by giving notice of our lien when the property was sold. There was no other course for us to pursue.

The act of 1838, ch. 205, sec. 8, provides for the very case of a sale by a decree under a mortgage, and the agreement refers to this act in its very terms. The act of 1845, ch. 176, makes machinery subject to the lien in the same manner as houses. The act of 1845, ch. 287, applies to houses, but the preceding act having put machinery upon the same footing, gives us the benefit of this subsequent legislation.

The only possible ground on which the decree of the Chancellor can be sustained, is, that these machines were fixtures, but now conceded that they are not fixtures; you cannot give a it is mortgage of personal property which does not yet belong to you. 53 *Eng. Com. Law Rep.*, 850. 4 *Bac. Abr.*, *Title Grant.*, 416. The case of *Robey vs. Hannon*, 9 *Gill*, 446, only shows that a party may grant property which is potentially his. The doctrine of mortgages on lands upon which houses are built, is not applicable to machines. The law has made a machine as much the subject of a lien as a house, and the doctrine that such fixtures pass by the mortgage of the ground upon which the building in which they are placed stands, would utterly destroy the lien and render the act in-

operative. But again, these mortgages are not recorded in time, and if they can be supposed to convey property not then in possession, they convey it *sub modo* and subject to the lien.

ECCLESTON, J., delivered the opinion of this court.

Under the decree in the case of *Samuel Jones, Jr., against R. B. Hancock and Thos. W. Mann, et al.*, the trustee sold the factory of Hancock and Mann, known as their Adamantine Candle Factory, for the sum of $20,500, on the 15th of February 1847. The sale included the lot, buildings, and the machinery in and about the premises, and was finally ratified on the 14th of June 1847. The claims on which the decree was passed consisted of three mortgages, given by Hancock and Mann to Dawson and Norwood, which afterwards passed into the hands of Samuel Jones, Jr. The first was dated and acknowledged the 31st of July 1845, and recorded the 10th of June 1846. The second was dated and acknowledged on the 11th of April 1846, and recorded the 16th June following. The third was executed the 16th of June 1846, and recorded the next day. In consequence of the second mortgage not having been recorded within the time prescribed for transfers of personal property, the last was executed for the purpose of conveying all the property included in the second deed, and all other personal property of every description belonging to Hancock and Mann, at or about the mortgaged premises. The two first conveyances included all the real estate connected with the factory, and likewise all the machinery and apparatus erected on the lot, or used or connected with the factory.

Part of the machinery in this establishment the appellants put up, on account of which they filed, in Baltimore county court, their claim under the lien laws, on the 21st of August 1846, and on the same day had a *scire facias* issued thereon. The making and putting up this machinery was completed on or about the 18th June 1846, the work having been commenced on the 7th of April preceding.

The claim of the appellants was filed in the chancery suit,

on the 26th March 1847, under the agreement of counsel that it should be so filed and be considered as if the proceeding had not been instituted in Baltimore county court. Also that no issue would be required to prove any fact connected with the claim, but the claim to be sustained in the usual way by affidavit. The costs taxed to follow the claim, and the *suit* in the county court to be off.

In his report, the auditor refuses to allow this claim, but out of the proceeds of sale he applied $9070.80 to the payment of a vendor's lien, due to the Canton Company of Baltimore, and the balance, after deducting costs and expenses, he appropriated to William Winn and James Ross, trustees and assignees of Samuel Jones, Jr., towards the payment of the mortgage debt. To which report the appellants filed exceptions, but the chancellor overruled them, and ratified the report.

The acts of Assembly which have been referred to as regulating the matter in controversy are, 1838, ch. 205, 1845, ch. 176, and 1845, ch. 287. The first of these laws relates to buildings, and does not include machines. The 9th section of which, and the 1st section of the second act, give preference to liens upon buildings, for work and materials, over all liens or incumbrances attaching subsequently to the commencement of the buildings. In the 4th section of the second act it is declared, " That every machine hereafter to be erected, constructed or repaired within the city of Baltimore, shall be subject to a lien, in like manner as buildings are made subject under the provisions of this and the original act to which this is a supplement." If, as we have seen, the mechanic's lien has preference over any other incumbrance attaching upon a building subsequent to its commencement, it necessarily follows that the lien of the mechanic attaches as soon as the house is begun. And inasmuch as machines are made subject to liens, "in like manner as buildings are," the claim of a mechanic upon a machine must commence as soon as he begins to put up the machine.

In this instance there is no doubt of the machinery having

been commenced prior to the 16th of June 1846, and therefore the claim of the appellants has preference over the mortgage of that date.    The uncontradicted evidence in the cause, and the admissions of counsel on both sides, clearly establishing the fact that this machinery was no fixture but movable, and therefore personal property, constituting no part of the factory building.    And being personalty it was not affected by either the first or second mortgage, neither of them having been recorded in time to pass personal property, and the first bearing date long before the machinery was commenced.

But admitting the appellants had a lien upon the machinery put up by them, still it is insisted that they cannot claim payment out of the proceeds of sale, notwithstanding the machinery was included in the sale.

In support of the appellants' claim some reliance was placed, in argument, upon the 4th section of the act of 1845, ch. 287.    But the counsel on the *other side* contended that this section related exclusively to buildings, and not to machines.    It cannot be necessary for us to say which is the correct view on this point, because we think, upon general principles of equity, a party having a lien upon property, under circumstances like the present, may claim satisfaction out of the proceeds of the same.

Previous to the sale, but at the place and on the day of sale, the trustee, (Mr. Glenn, who was also solicitor of the complainant in the chancery suit,) was notified of the appellants' lien claim.    In the report of the trustee he states the property was sold, "free of all incumbrances."

Between the sale and the ratification thereof, the agreement, already mentioned, was filed, by which the *scire facias* in the county court on the lien claim went off, the parties consenting that the claim should be filed in the chancery case, and requiring no issue to "prove any fact connected with the claim," but that the same should be sustained in the usual way, by affidavit.    The agreement is not so clear and explicit in its terms as it might be, but we understand it as an arrangement entered into, for the purpose of avoiding any difficulty

to which the purchaser might be subjected by the proceeding at law, he having purchased the whole property, free of all incumbrances; and in consideration of the appellants' consenting to strike off the *scire facias*, their claim might be exhibited in chancery and paid out of the proceeds of sale, if it should be decided that they had a lien on the machinery, and entitled to a preference over the mortgage claim of the complainant. It would be truly a one-sided agreement, if the appellants were to strike off the suit at law, (which was a proceeding against the property itself,) and go into chancery, claiming payment out of the proceeds of sale, but so soon as they get there, they are to be told their claim, if they have any, is not against the proceeds, but against the machinery.

In *Brooks vs. Brooke, et al.*, 12 G. & J., 318, where land had been sold under a mortgage, and there were prior incumbrancers, not parties to the suit, in which the trustee sold the property, "clear of all incumbrances," it was held proper to pay off the elder liens out of the proceeds.

One of the objections urged against the allowance of the appellants' claim out of the fund in court is, that the price at which the machinery, said to be bound by their lien, was sold, cannot be ascertained with sufficient certainty, as the property including the machinery was sold *in mass*. We do not see any very serious difficulty presented by this objection. It not unfrequently occurs, in courts of equity, that the relative value of different parts of mixed property is to be ascertained through the agency of proof on the subject, and why should it not be done in the present instance? There is evidence already in the record on this point. But when the case goes back to the chancery court, and is sent to the auditor to state another account, if the parties desire it, there is no reason why they should not be permitted to furnish other proof.

The amount allowed in favor of the vendors' lien, was conceded by counsel on both sides to be correct.

It is due to the learned chancellor to state, that when his opinion was filed in this cause, and which is reported in 1

*Maryland Ch. Decisions,* 187, there was no proof that the machinery in controversy were not fixtures, but movable, and no evidence had been given in relation to the value of this machinery. After the chancellor's order, in December 1847, overruling the appellants' exceptions and ratifying the report of the auditor, by consent of the parties, the case was opened and further evidence introduced. Subsequently the auditor made a further report, still disallowing the claim of the appellants, to which they excepted. The chancellor overruled these exceptions also, and finally ratified a report of the auditor, which excluded the present claim from any part of the proceeds of sale. From the different orders adverse to the claim of the appellants this appeal is taken. We must reverse those orders and remand the cause, with instructions to allow this claim as entitled to a preference over the mortgage claim, so far as from the proof he may find to be the fair value at the time of sale, of the machinery which was subject to the lien of the appellants, according to the principles of this opinion. They are also to be paid their costs out of the fund in court. A decree in conformity with these views will be signed.

*Orders reversed and cause remanded.*