CHARLESTON LUMBER AND MANUFACTURING COMPANY

*v.*

BROCKMYER *et als.*

Decided November 19, 1881.

*(PATTON, JUDGE, absent.)

1. There can be no mechanic's lien on the real estate of a married woman, when she has not a separate estate therein.

*Cause submitted before Judge P. took his seat.

2. There may be a mechanic's lien on the rents and profits of the separate real estate of a married woman, when she or her agents have made the contract with the mechanic for building.

3. The vendor's lien is in this State superior to the mechanic's lien. If A agrees to convey land to B and puts himself in possession thereof under an agreement, that he will build a house thereon, and that then A will convey it to him reserving a lien on the property, and B contracts with a mechanic to build such house, and it is built, and a mechanic's lien claimed on the property and recorded under chapter 139 of Acts 1872-3, page 460, and afterwards the deed is made to the purchaser reserving such vendor's lien for the unpaid purchase-money, such lien will have priority over the mechanic's lien.

4. In such case it will make no difference, that A knew, that B could not build a house except on credit, or that he knew and consented to his building it on credit. A's interest in the land can not be subjected under our statute to the mechanic's lien, unless A contracted with the mechanic, or unless B acted as A's agent in making the contract.

5. In such a case if B be a married woman, the mechanic in seeking to enforce his lien on her separate estate ought not to make the vendor, A, a party defendant. The land could only be sold in a separate and original suit instituted by the vendor, A, to enforce his lien on the *corpus* of such real estate.

6. If A should institute such suit, and after selling the land and paying off the vendor's lien there was a surplus, it would become the separate personal estate of B, and could therefore be properly applied to the payment of the mechanic's lien.

Appeal from and *supersedeas* to two decrees of the circuit court of the county of Kanawha, rendered on the 6th day of January, 1876, and on the 10th day of June, 1878, in a cause in said court then pending, wherein the Charleston Lumber and Manufacturing Company was plaintiff and C. A. Brockmyer and others were defendants, allowed upon the petition of said Company.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the decrees appealed from.

Green, Judge, furnishes the following statement of the case :

The Charleston Lumber and Manufacturing Company at April rules, 1875, filed its bill against Mrs. C. A. Brockmyer and others in the circuit court of Kanawha county to enforce against a house and lot in Charleston a mechanic's lien, which they had recorded in the county court clerk's office of Kanawha

county on September 15, 1874. B. H. Smith and wife and Isaac N. Smith and wife were made defendants also in this bill, because on September 14, 1874, there was recorded in the said clerk's office a deed from said parties to Catherine Brockmyer, wife of C. A. Brockmyer, a deed with general warranty, conveying said lot and reserving in it a vendor's lien for $450.00, the whole of the purchase-money, payable in five equal annual instalments with interest from date of the deed, which was February 7, 1874. This deed was acknowledged by the various parties during the month of August, 1874. The bill claimed, that the plaintiff's mechanic's lien had priority to this vendor's lien and asked, that the priorities of these two liens might be determined, and the house and lot be sold to pay the plaintiff's lien. This deed to Mrs. Catherine Brockmyer is filed with the bill. An answer was filed by all the defendants except C. A. Brockmyer and his wife. In this answer it is stated, that all the notes for the unpaid purchase-money then belonged to Benjamin K. Smith, and this answer claims, that this vendor's lien has priority over the plaintiff's lien.

The bill was taken for confessed as to the defendants, C. H. Brockmyer and wife, and on January 6, 1876, the court decreed, that the mechanic's lien claimed by the plaintiff was valid and that the plaintiff recover of Mrs. C. A. Brockmyer, *alias* Catherine Brockmyer, the amount thereof, $481.79 with interest from January 6, 1876, and the costs of suit, and if the sum was not paid within thirty days, that A. Burlew, a commissioner appointed for that purpose, should sell publicly said house and lot on terms prescribed and after a prescribed advertisement. And the court being of opinion, that B. H. Smith had a vendor's lien on this lot then amounting to $503.30, and that this lien was a prior lien to the mechanic's lien of the plaintiff, it ordered, that it be first paid out of the proceeds of the sale, that then the said mechanic's lien should be paid, and that the balance should be paid to Mrs. Catherine Brockmyer. The commissioner of sale was required to give proper bond and security, conditioned according to law before receiving any of the purchase-money, and was required to make his report of sale. This report he did make ; and in it he states, that on April 17, 1876, he made

the sale, and the house and lot was knocked down to the plaintiff at the price of $1,100.00. It was bid for by one Woodruff in the name of the plaintiff, but the plaintiff denied his authority to bid, and the commissioner satisfied himself, that he had no such authority and advised a re-sale to be ordered. On January 3, 1878, the court accordingly ordered on motion of Benjamin H. Smith such re-sale but without prejudice to the rights of Brockmyer and wife arising out of the facts occurring at said attempted sale.

On May 16, 1878, the plaintiff tendered a supplemental bill. It states, that in January or February, 1874, Mrs. Catherine Brockmyer, by her husband, C. A. Brockmyer, made a verbal agreement with the Messrs. Smith to purchase said lot for $450.00, to be paid in five equal annual instalments. They agreed to sell said lot on condition, that she would build a dwelling-house on it, and that they would execute a deed for it, after said dwelling-house was built by her; and she accordingly did build the dwelling-house; that she bought the bill of lumber of the plaintiff on credit and built the dwelling-house with the express consent of said Smiths, while they held the title to the said lots; that the deed they executed to her reserving the vendor's lien was executed, after the house was completed by her, and was recorded only one day before the plaintiff's mechanic's lien for material furnished was recorded; that neither Mrs. Brockmyer nor her husband had any means of purchasing this lot and building a house on it except on credit, and the Messrs. Smith well knew this; that these facts have come to the knowledge of the plaintiff since the first decree was rendered in this cause, and the plaintiff could not discover them, because they were known only to the defendants; that Brockmyer in addition to the materials bought of the plaintiff bought other material, and had work done on credit to the amount of $485.00, making the actual cost of the house $935.00. This supplemental bill asks, that the decree of June 6, 1876, may be so altered as to make the plaintiff the first lienor, when this supplemental bill is heard with respect to the new matter. The facts sated in this bill were substantially supported by an affidavit accompanying it.

Before this supplemental bill was offered, the commissioner of sale had made his second report dated April 24, 1878, stat-

ing that after advertising said house and lot as directed he offered it publicly on April 13, 1878, and received a bid of $500.00. He adjourned the sale from day to day till April 24, 1878, when he struck down the house and lot to Mrs. Mary K. Gilliland for $605.00, she being the highest bidder; and the terms of sale were complied with by her. The commissioner then says: "That said lot and premises were sold in his opinion, for a very inadequate price, as a matter of fact for less than one half of the actual cost of said premises; but your commissioner felt it to be his duty to make the sale and report the same to your Honor." The commissioner also reports, that there are State and city taxes he knows of due on the property amounting to $40.00, and probably other taxes, which taxes were a lien on the fund; and he asks the court to so modify its order, that these taxes may be first paid out of the fund. This report was not excepted to; and nearly two months after the sale, on June 10, 1878, the court by its decree confirmed it and refused to permit the supplemental bill, which had been tendered, to be filed, and ordered, that the decree heretofore made be so modified as to direct the commissioner after first paying the costs of this suit out of the proceeds of sale to pay said taxes before paying any money on either of said liens, and he is directed to collect the purchase-money and pay it out, as heretofore directed with this modification; and when it is all collected he is directed to make a deed to the purchaser, $10.00 for making such deed to be taxed in the costs.

From this decree the plaintiffs obtained an appeal and *supersedeas* from this Court.

*A. Burlew* for appellant relied upon the following authorities: *Whiting* v. *Bank of U. S.* 13 Pet.; 2 Rob. (old) Pr. 414; Adams Eq. s. p. 416, 771 and note; Story Eq. Pl. §§ 404, 407; 10 W. Va. 12; Acts 1872–3, ch. 139, § 2; 63 N. Y. 476; 56 N. Y. 610; 45 N. Y. 768.

*Benjamin H. Smith* for self and J. N. Smith.

Green, Judge, announced the opinion of the Court:

This case involves an enquiry into the extent and character of the mechanic's lien under our statute, chapter 139 of Acts

1872–3.    The statute itself 2d section, page 460 provides expressly, that " such lien shall have priority over every lien created by deed or otherwise on such house or other building and appurtenances and the lots, on which the same are erected, subsequent to the time when such labor shall be performed and material furnished." This would, it seems to me, by its clear language give a lien from the time when the labor commenced on the buildings or the material commenced being furnished, though by the 3d section thirty days, after the labor has ceased or the material has ceased to be furnished, are given within which to record the lien:    Thus for a time it is a secret lien.    The mechanic's lien under our statute begins from the day, when the work is begun, according to what is, I think, its plain meaning.    Similar statutes have been generally so construed.    See *Wells et al.* v. *Canton Co.*, 3 Md. 234. The material furnished and work done under the second section must in the language of the statute be furnished and done " by virtue of a contract with the owner or his agents"; and the lien attaches to the lot or lots, on which the building is erected, as well as to the mere building itself.

On the other hand it would seem apparent from the words of the statute above quoted, that it would have priority over a subsequent lien on the lot or lots, on which the building was erected, though this lien did not include the house.    It would seem obvious, that it would not have priority over any antecedent lien on the lot itself, and that such antecedent lien, when the building was erected on the lot, would include a lien on the building, it being necessarily a part of the lot and annexed to it permanently.    In some of the states by special provisions of their statutes the antecedent lien would be good only on the lot, as it was unimproved, while the mechanic's lien would have priority on the building itself, which would be separately valued ; but there is no such provision in our statute, and without it no such separation of the lot from the building on it can be made.    Under our statute the vested rights of third persons, neither parties nor privies to the contract for building or furnishing materials, cannot be prejudiced by the mechanic's lien.    Mechanics like other persons are bound to ascertain for themselves the nature of the interest of

their employer.   *Brown* v. *Sullivan,* 5 Pike 221 ; *Associates of Jersey Company* v. *Davison,* 5 Dutcher 422.

Equity raises no lien in reference to real estate except that of a vendor for his purchase-money ; and the lien of the mechanic must therefore be subordinate to that of the vendor of the land, on which the building is erected, for the unpaid purchase-money ; and the court cannot in the absence of any statutory provision undertake to give to the mechanic a lien against a previous vendor's lien on any part of the purchase-money, for which the lot and building might sell because of its enhanced value by reason of the erection of the building. See *Orr* v. *Batterton,* 14 B. Mon. 100.   The owner of the land, with whom or with whose agents the contract must be made under our statute, is not simply the legal owner, but it includes also an equitable owner ; nor need he be the owner in fee, he may own any interest in the land, but the mechanic's lien will of course be confined to a lien on his interest in the land.   Thus a mechanic's lien may be created on a tract of land, when his employer has but a covenant to convey the land, which is afterwards conveyed to him ; but if at the time he got the conveyance, he gave a mortgage on it to a third person to secure money advanced to make a payment on this land, the mechanic's lien would not have priority over such mortgage, because the covenantee would have had but an instantaneous seizin of the land.   See *Thexter* v. *Williams et al.,* 14 Pick. 49.   And much more obviously if the employer of the mechanic as in this case had only a parol contract for the land and when, after the building was erected, he got a deed for it, on the face of which the vendor's lien was retained, the mechanic's lien must yield precedence to the vendor's lien ; for in such a case there was not a moment of time, when the employer of the mechanic had any title legal or equitable, which was not subject to this vendor's lien, which existed always and prior to the employment of the mechanic.   This conclusion is deducible from the cases of *Seitz* v. *The U. P. Railroad Co.,* 16 Kan. 134, syllabus 2 and 3 ; *Hayes* v. *Fessenden et al.,* 106 Mass. 228 ; *Hilton* v. *Merrill,* 106 Mass. 528 ; *Rollin* v. *Cross,* 45 N. Y. 770 ; *Loonie et al.* v. *Hogan,* 9 N. Y. 435 ; *Craig* v. *Swinerton,* 15 N. Y. (8 Hun) 147.

These cases also show, that unless the statute so pro-

vides, the consent of the holder of the legal title, that the person, who has agreed to purchase the land of him, shall or may erect a building upon it, will not make the interest of the legal owner of the land liable to the mechanic's lien arising from a contract by the mechanic with the party, who has agreed to purchase the land. Of course if the building was erected on the responsibility of the legal owner of the land, and the person, who had agreed to purchase it, in his contract with the mechanic acted as the agent of the legal owner, his interest in the land would be bound by the mechanic's lien, as he would then come within the express words of our statute ; but neither his consent, that the building might be erected by the person, who had agreed to buy the land of him, nor his knowledge, that he was having it erected on credit, would make the legal owner responsible for the debt incurred nor his interest in the land liable to the mechanic's lien. The above cases sustain this position and show further, that to meet the supposed hardships of the case some States have by their statute-law enacted, that under such circumstances the giving by the owner of his consent to the erection of the building by another, who had a contract of purchase with him, should render the interest of the legal owner of the land liable to the mechanic's lien. Our statute has no such provision ; and this itself is sufficient to show, that the express consent of the legal owner and his knowledge, that the buildings were being erected on credit, would not subject his legal interest in the land to the mechanic's lien. Nothing under such circumstances under the very words of our law could subject his interest in the land to such lien except a contract by himself or his agent with the mechanic. It is therefore obvious, that neither under the statements in the original bill nor in those of the supplemental bill could the plaintiff have a right to priority over the vendor's lien of the Smiths. For there is not even a pretence, that the Smiths made any contract with the plaintiff, or that Brockmyer in making his contract with the plaintiff acted as the agent of the Smiths or pretended to so act. It was the duty of the plaintiff, if it intended to look to the mechanic's lien on the building as its security, to have seen to the title or interest of its employer in the lot ; for under our law only that interest, when the furnishing of the ma-

terials commenced, could be subject to the mechanic's lien. The supplimental bill therefore did not vary the case stated in the original bill; and the court did not err in deciding, that the Smiths had the first lien on this house and lot.

The next enquiry is : Did the plaintiff have any lien on this land ? In considering this question we will at first assume, that it complied with all the requirements of the mechanic's lien-law. The defendant, Mrs. Catherine Brockmyer, was, when they contracted with her, a married woman. If she had not her separate estate in the lot, on which this house was built, it is obvious, they would have acquired no mechanic's lien upon it, whether they contracted with her husband alone, or whether she joined with her husband in the contract. Our law says, section 2, chapter 139 of Acts of 1872-3, page 460, that to give rise to the mechanic's lien, the work done or materials furnished must be done or furnished "by virtue of a contract with the owner of the land or his agents." This contract, which gives rise to the mechanic's lien, must be of course a legal contract, one binding on the parties to it. At common law a married woman could make no legal contract, and she cannot now, unless she be the owner of a separate estate. It follows therefore, that if she were not the owner of a separate estate in the lot, on which this building was erected, the plaintiff could not possibly have a mechanic's lien on this lot or on the building erected on it. This position is sustained by all the authorities. See *Fetter* v. *Wilson et al.*, 12 B. Mon. 61.; *Johnson* v. *Parker*, 3 Dutch. 241.

But if the married woman has a separate estate in the land built on, the reason, why a mechanic's lien could not attach to her land under the common law, evidently does not apply ; for to the extent, to which she could by her own contract or act bind her separate estate, to that extent and to that extent only could her contract with a mechanic give rise to a me-. chanic's lien under our law ; for this lien is based by our law solely on this contract. In accordance with these views the courts have held, that a *feme covert* by her contract with a mechanic may give rise to a mechanic's lien on her separate real estate. See *Greenleaf et al* v. *Beebe et al.*, 8 Ill. 520; *Collins et al.* v. *Megraw et al.*, 47 Mo. 497 ; *Dearie et ux.* v. *Martin*, 78

Pa. St. 57.   And as we have decided, that by no contract can a married woman (except by joining with her husband in a formal deed and being privily examined) bind the *corpus* of her real estate, it must follow, that she cannot by any contract, which she can make, give rise to a mechanic's lien, which would bind the *corpus* of her real estate.   But we have decided, (see *Radford et al.* v. *Carwyle et al.*, 13 W. Va. 572) that she may by a contract bind the rents and profits of her separate estate during the continuance of her marriage.   It must therefore follow, that by a contract with a mechanic to build a house on her separate real estate or by a contract with any one to furnish material for such a building she may create a lien under our law, which will render the rents and profits of the building so erected, so long as the marriage continues, liable to the payment of said lien in preference to any lien, which she and her husband could subsequently create by uniting in a deed.   But such lien could only be enforced, as other debts of a married woman are enforced, by renting out the property from year to year during the continuance of the marriage.   It follows, that the vendor's lien of the Messrs. Smith has priority over the debt or lien, if it be one, of the plaintiff, and it is a lien on the *corpus* of the real estate of Mrs. Brockmyer, while the lien, if there be one, of the plaintiff is merely on the rents and profits of the building and lot during the continuance of her marriage.   They being thus liens on distinct subjects and in no manner connected, they ought not to be enforced in the same suit, especially as the enforcement of one utterly destroys the other.

*It is insisted, that the plaintiff's bill ought to have been* dismissed, because the allegations in both the bill and the supplemental bill fail to show, that the plaintiffs have failed to perfect their mechanic's lien as required by law ; but admitting this, it does not follow, that the bill should be dismissed.   On the contrary, as the bill unquestionably states facts, which show, that Mrs. Brockmyer was indebted to the plaintiff, and that she had separate real estate, this house and lot, out of which the plaintiff as simply her creditor had a right to enforce the payment of its debt by renting out the same during the continuance of the marriage, the plain-

tiff, though he mistook the extent and character of his remedy, would nevertheless under his general prayer for relief be entitled in this suit to have the house rented out during the continuance of the marriage to pay its debt, which is all that it could do, if it had a good mechanic's lien.

The decree of the circuit court therefore of January 6, 1876, is erroneous and should be reversed. The only decree, which the court could properly have rendered, was one declaring, that the Messrs. Smith had a vendor's lien on the *corpus* of Mrs. Brockmyer's house and lot, and that it had priority over the debt or lien of the plaintiff, and that the Messrs. Smith and their wives were improperly made defendants to this bill, and dismissing the bill as to them at the plaintiff's costs and ordering the house and lot to be rented to pay the debt of plaintiff from year to year till the further order of the court, which renting should have been continued till the plaintiff's debt was paid, or so long as her marriage continued, or until the house and lot were sold to satisfy this vendor's lien in an independent suit for that purpose instituted by the Messrs. Smith, if they thought proper to institute such a suit. But if such sale should be made under the vendor's lien, it would convert Mrs. Brockmyer's separate estate in real property to a separate estate in personal property; and therefore the surplus, which this house and lot might bring, over what was necessary to satisfy the vendor's lien, being personal property, it might and should be applied to her debt to the plaintiff. But a sale having been already made under the decree of January 6, 1876, though the decree be reversed, under the provisions of the Code of West Virginia, chapter 132, section 8, page 630, it would not affect the title of Mrs. Mary K. Gillard, who bought at the sale under this decree, and whose sale was confirmed by the decree of June 10, 1878, unless this decree should also be reversed by this court. This decree ought to be reversed because of the inadequacy of price under the circumstances set forth in the statement of the case.

But before the court confirmed this sale by its decree of January 10, 1878, the plaintiff tendered his supplemental bill, which asked a review of the decree of June 10, 1878, on two distinct grounds, one of which was after-discovered evidence,

and the other was error on the face of the decree of June 6, 1876. The first ground, we have seen, was insufficient to justify a review or reversal of the decree of June 6, 1876, inasmuch as the newly discovered facts, if true, would not have altered the real case stated in the bill. But the second ground for the review, that the decree was erroneous on its face, was, we have seen, a good ground for the review, as there was such error on its face. The court therefore by its decree of January 10, 1878, instead of refusing to permit this supplemental bill or bill of review to be filed ought to have permitted it to be filed, and ought to have reviewed and reversed the decree of June 6, 1876, and set aside the sale made under it instead of confirming the sale as it did. This decree is appealed from and is for these reasons erroneous and should be reversed.

The decrees therefore of January 6, 1876, and June 10, 1878, must both be reversed; but the appellants are not entitled to recover their costs in this Court, as they do not substantially prevail here; and this Court proceeding to render such decree, as the court below ought to have rendered dismisses the plaintiff's bill as to the defendants, the Messrs. Smith and their wives, and adjudges, that they recover of the plaintiff their costs incurred in the circuit court, and remand this cause to the circuit court with instructions to set aside the sale of the house and lot to Mrs. Mary K. Gillard and to have the moneys, which have been paid by her on such sale refunded, and her purchase-money bonds given up, and such other steps taken, as will restore her to the position she was in, before such purchase was made by her, and otherwise to proceed with this cause on the principles laid down in this opinion and further according to the principles governing courts of equity.

JUDGES JOHNSON AND HAYMOND CONCURRED.

DECREES REVERSED, CAUSE REMANDED.