# CHARLESTON.

## Howe v. Stortz et al.

Submitted January 23, 1886.—Decided February 13, 1886.

1. The debt of a general creditor of a married woman does not constitute a lien or charge upon the separate estate real or personal of such married woman prior to the institution of suit by such creditors to subject such separate estate to the payment thereof. In such suit the court will sell the separate personal property of the *feme covert* and apply the proceeds of the sale thereof to the payment of the debt, but will not sell the *corpus* of her real estate to pay such debt, but will only subject the annual rents and profits during the joint lives of herself and husband, or more accurately speaking, during the existence of the coverture, to the payment of such debt. (p. 559.)

2. In such a suit other general creditors of the *feme covert* ought not to be made defendants ; and except under peculiar circumstances other creditors of the *feme covert* having deeds of trust upon the *corpus* of her separate real estate or other specific liens thereon, as for example a vendor's lien, ought not to be made defendants in such suit. (p. 561.)

*Tomlinson & Polsley* for appellant.

*G. P. Simpson* for appellee.

Statement by GREEN, JUDGE :

At January rules, 1881, Robert Howe filed his bill in the circuit court of Mason county, in which he alleges, that Simon Stortz and Mary J. Stortz, his wife, being indebted to him on August 6, 1880, executed payable to the order of this plaintiff two negotiable promissory notes, each payable at the Merchants' National Bank of West Virginia, and each dated August 6, 1880, the one for the sum of $200.00, payable sixty days after date, and the other for $300.00 payable four months after date. The last one was endorsed by the plaintiff and placed in a bank at Cincinnati for collection, and not being paid was duly protested, and the costs of the protest ($1.73) paid by the plaintiff. The plaintiff filed with his bill the two negotiable notes above described and said protest as exhibits. He further alleges in said bill, that these defendants owed him also $42.00 for merchandise sold them October 29, 1880,

and that no part of either of these debts had been paid. The plaintiff in this bill further alleges, that Mary J. Stortz is possessed in fee as her own separate estate of a part of a certain lot in the town of Point Pleasant in said county particularly described in the deed from James W. Misner and wife, an attested copy of which is filed with the bill as an exhibit. This deed, which was duly acknowledged and recorded, is dated June 8, 1880, and the consideration recited in it is $1,600.00 cash in hand paid by Mary J. Stortz, to whom this upper part of lot No. 9 first tier in said town described by metes and bounds is conveyed for her sole and separate use free from the debts of her husband. The prayer of this bill is as follows :

": The plaintiff therefore prays that this court may render a decree in his favor for the said sum of $544.03, with the interest due thereon, against the said Simon Stortz and Mary Stortz ; and that if the same be not paid, or can not be made out of the personal property of the said Simon Stortz within thirty days from the time of the entering of said decree by a writ of *fieri facias*, that then said lot or tract of land, the separate estate of said defendant, Mary Stortz, may be sold to satify the amount due under said decree; he also asks such other and general relief as the court may see fit to grant."

Though this deed to Mary J. Stortz recites, that the whole consideration for the parcel of land ($1,600.00) was paid by her in cash, yet I suppose, that in fact only $1,000.00 of it was paid, and that on the same day the deed was executed she gave a deed of trust to the vendor, James W. Misner, to pay the balance of the purchase-money. For it appears afterwards by the record of this cause, that on June 8, 1880, the same day the deed for this parcel of land was made to her and duly recorded, she executed a bond to James W. Misner payable one year after date with interest at six *per cent.*, and at the same time she and her husband, Simon Stortz, executed a deed of trust to D. W. Polsley, trustee, duly acknowledged and recorded, conveying this parcel of land in the town of Point Pleasant to secure the payment of the bond as above described.

On May 5, 1881, C. C. Weibert by leave of the court was made a defendant to the above cause and filed his petition,

in which he claimed that he was the assignee of James W. Misner of the bond above described, and that it was secured by a deed of trust on the land named in the bill, an attested copy of which deed of trust he filed as an exhibit; but he does not file a copy of said bond or of the assignment of it to him as claimed. He simply asks that he may be made a party-defendant, that he may protect his interest. On May 14, 1881, this bill was demurred to, and the demurrer was overruled by the court, and four days afterwards, on May 18, 1881, the defendants, Simon Stortz and Mary J. Stortz, filed their joint answer, in which they deny that they ever executed to the plaintiff either of the negotiable promissory notes named in the bill or purchased of the plaintiff merchandise to the amount of $42.30 or any merchandise on October 29, 1880 ; and Mary J. Stortz denies, that she ever bought any goods of any kind of the plaintiff. This answer was not sworn to, nor was the bill, but the answer was replied to generally ; and thereupon, on the same day it was filed, on May 18, 1881, the court entered the following decree :

"This day the defendants, Simon Stortz and Mary Stortz, tendered their joint and separate answer to the plaintiff's bill, and asked leave to file the same. To the filing of which the plaintiff objected, which objection was overruled, and the said answer ordered to be filed, which is accordingly done, and the plaintiff replies generally thereto. Whereupon this cause came on this day to be heard upon the process duly served on the defendants, Simon and Mary Stortz, and the petition and order heretofore entered making C. C. Weibert a party defendant, on the bill and the exhibits therewith filed, upon the decree *nisi*, the bill taken for confessed and regularly set for hearing, and the said joint and separate answer of the said Simon and Mary Stortz, defendants, with the general replication thereto, and was argued by counsel. On consideration whereof, the court is of opinion that the defendant, C. C. Weibert, has a just and valid first line on said property, as set out and described in his petition, for the sum of $600.00 and the interest thereon, amounting to $34.00 and is also of the opinion that the plaintiff is entitled to recover of the defendants, Mary and Simon Stortz, the sum of $524.76 and doth adjudge, order and decree that the said

plaintiff, Robert Howe, recover of the said defendants, Simon Stortz, and out of the separate estate of the said Mary Stortz, the said sum of $524.76 with legal interest thereon from this date until the same is paid. It is further adjudged, ordered and decreed that unless the said Simon Stortz, and Mary Stortz, or either of them, or some one for them, do when the said $630.00 as aforesaid becomes due, on June 8, 1881, pay said sum of $630.00 to the said C. C. Weibert, or his assignees, and due within thirty days from the rising of this Court pay to the plaintiff the said sum of $524.76 and the same can not be made by the levying of a writ of *fieri facias* (leave of the court being hereby granted to sue out said writ) out of the property of the said Simon Stortz, one of the defendants, that then H. R. Howard, who is hereby appointed a special commissioner for that purpose, do, after first advertising the time, terms and place of sale in some newspaper published in Mason county, proceed to sell by way of public auction, at the front door of the Court House of Mason county, the real estate set out and described in plaintiff's bill as the separate estate of the defendant, Mary Stortz, for the trust debt aforesaid, upon the following terms, viz. · Cash as to the said debt and interest of C. C. Weibert, and if there is any excess after the payment of said Weibert's lien, then one-fourth of the said excess cash, and the balance of said excess on a credit of six, nine and twelve months, the purchaser giving bond with personal security for the deferred installments, and the title of the property to be retained as a further security; said excess of said sale to be applied to the payment of the said debt due the said R. Howe, and after paying said debt of said Howe, the balance to be paid to said Mary Stortz. And the said special commissioner, before receiving any money from the sale of said property under this decree, shall give bond before the Clerk of this Court in the penalty of $800.00 conditioned according to law, and he shall also report his proceedings to this court, and this cause is continued."

From this decree the defendant, Mary Stortz, has obtained an appeal snd *supersedeas*.

Opinion by GREEN, JUDGE :

The extent of a married woman's separate estate and her control over it and the modes, in which liens on her real

property can be created, and the manner in which she can create debts, which are charges on her separate estate, and how such debts can be collected, have been settled in this State by a series of decisions. It is only necessary to state briefly, how these various matters have been settled in this State by the decisions of this Court, to show that in the progress of this cause the circuit court violated the principles, which have been thus settled, and that the decree appealed from must be reversed. As was said by the Court in *Radford et al.* v. *Carwile et al.*, 13 W. Va. 671:

" The whole object of a court of equity in recognizing a separate estate in a married woman was to deprive the husband of his marital rights, and to recognize in the wife an ownership of that part of her property, of which by the common law her husband had the control and ownership; that is, to recognize in the wife an ownership during her coverture of her personal property and the rents and profits of her real estate. The common law recognized her ownership of the *corpus* of her real estate, and fully protected it against the control of her husband and from liability for his debts. There was no necessity for courts of equity to make any change with reference to the *corpus* of her real estate; and they accordingly made no change. As at common law she could not dispose of the *corpus* of her real estate by her sole deed, nor could she devise it, because of her utter disability to make any contract, or make a will, the courts of equity left these rules of the common law in full force, as they in no manner touched or affected the subject, which they had taken under their charge, that is her personal property, and the rents and profits of her real estate, which would belong to her husband but for the interposition of the courts of equity."

The conclusion drawn from these premises is (page 674):

"A court of equity can in no case sell the lands of a married woman to pay her debts, except when she has made it liable by a mortgage or deed of trust, executed by her husband and duly acknowledged by her after privy examination, or when it is subject to a specific lien. All that a court of equity can do, in any other case, is to sell her separate personal property and apply the rents and profits of her real estate during the coverture to the payment of her debt."

This liability can only be enforced in a court of equity. (*Stockton* v. *Farley*, 10 W. Va. 171.) The nature of this suit in equity, to enforce the payment of a debt of a married woman out of her separate estate by the sale of her personal property and by the application of the rents and profits of her real estate during coverture to the payment of her debts, is clearly shown in the case of *Hughes & Co.* v. *Hamilton et als*, 19 W. Va. 366. The Court say on page 393:

"The proceeding is to a great extent similar to a proceeding *in rem*, as for instance a bill in equity to subject the estate within this State of a non-resident debtor to the payment of a debt, as in the case of *Oriode* v. *Buchanan*, 22 Gratt. 205 and 10 10 Gratt 204. As is said in *Radford* v. *Carwile*, 13 W. Va. 607, the creditors of a *feme covert* have no priority over each other, unless it be acquired by superior diligence in proceeding to obtain satisfaction. A general creditor of a married woman having no lien or charge upon her separate estate prior to the institution of his suit in equity to subject such separate estate to the payment of his debt, it is not necessary or proper to make other general creditors parties to the bill or suit. But other general creditors of a married woman, may each for himself file his bill to subject the separate estate to the payment of their respective debts; and perhaps it might be proper and allowable for all the general creditors of the married woman to file their petitions in a pending cause praying, that such separate estate should be subjected to the payment of their respective debts. But in all cases the general creditors would have priority of payment out of such separate estate between each other according to the time or times their suits are brought or petitions filed; that is to say, the general creditor who first brought his suit would be entitled to priority of payment out of the proceeds of the sale of the personal property and the rents of the realty, and the second next, and so on, and the same as to the date of filing petitions. The filing of petitions in a pending cause, should however, not be so indulged as to unreasonably delay the original plaintiff in obtaining a determination and satisfaction in his case."

On page 395, the Court says:

"The foregoing views and principles are established in the case of *Radford* v. *Carwile et al.*, 13 W. Va. 572, or are de-

ducible from the principles there laid down and necessarily follow therefrom. From what has preceded it seems that the debt of a general creditor of a *feme covert* after suit brought by said creditor to subject her separate estate to the payment of his debt becomes a *quasi*-lien at least upon such separate estate for the satisfaction thereof."

As a general creditor of a married woman, because before the institution of his suit he had no lien, ought not to make other general creditors parties to his suit either as plaintiffs or as defendants, so he ought not except for some peculiar reason to make any creditor, though he has a specific lien on the whole or a part of the property of the married woman, a party defendant or plaintiff in such suit. In the case of *Charleston Lumber Manufacturing Co.* v. *Brockmeyer et al.*, 18 W. Va. 586, this Court decided, that even a creditor, who had a mechanic's lien for building a house on the real estate of a married woman having a separate estate therein, and who instituted a suit in equity to enforce his claim, ought not to make a vendor, who had a vendor's lien on the real estate, on which such house was built, a party defendant. (See point 5 of syll., p. 587.)

This Court on page 595 says: "Such lien could only be enforced, as other debts of a married woman are enforced, by renting out her property from year to year during the continuance of the marriage. It follows, that the vendor's lien has priority over the mechanic's lien; and it is a lien on the *corpus* of the real estate of the married woman, while the mechanic's lien is merely on the rents and profits of the building and lot during the continuance of the marriage. They being thus liens on distinct subjects, and in no manner connected, they ought not to be enforced in the same suit, especially as the enforcement of the one may utterly destroy the other."

If then a mechanic, who has a sort of lien on the separate estate of a married woman, where he has built a house on her land, can not properly make the vendor of the land, who has a vendor's lien upon it, a party defendant in any suit, which he may bring to enforce his lien, it seems clear, that a general creditor of a married woman, who brings a suit to enforce his debt out of the separate estate of the marrie

woman, ought not to make a vendor of such married woman, who has a vendor's lien on her land, nor a creditor of hers, who has a deed of trust on her land to secure a debt, a party defendant. For such creditors, whether vendors or deed of trust creditors, have a lien on the *corpus* of her real estate, while the personal creditor, who begins such suit, can only charge her personal property and subject it to sale, but in reference to her real estate, on which are such liens, he can only charge the rents and profits during the continuance of the marriage. The lien then of the general creditor, which has no existence till the institution of his suit, is, when it does arise, on subjects distinct from such specific liens; and as they are in no manner connected, they ought not to be enforced in the same suit, especially as the enforcement of the vendor's lien or the lien of such deed of trust creditor might utterly destroy the lien of the general creditor on the rents and profits of the real estate.

But cases might arise, where it would be proper for the general creditor of a married woman in bringing a suit in equity to collect his debt to make the creditors of the married woman by deed of trust parties defendant. Thus, if there were a deed of trust on all the personal property of the married woman as well as all her real estate, and the creditor secured by such deed of trust had a debt, which could be made by a sale of the real estate under his deed of trust leaving the married woman's personal property when sold a fund, out of which to pay her general creditors, in such a case the general creditor in bringing his suit in equity could properly make this creditor, who had a deed of trust, a defendant; and if this were done, he might then properly make any other creditor, who had a deed of trust on the real estate only, a party defendant. In such a case the general creditor would have a right to require the creditor, who had a lien on the *corpus* of the real estate as well as on the personal estate, to sell first the *corpus* of the real estate so as to leave him his lien on the personal estate as he had no lien on the *corpus* of the real estate. And in order that the court might thus enforce the sale under the deeds of trust in such a way as not to prejudice the general creditor, these specific lienors should be made defendants in such a case. The case

of *Hughes & Co.* v. *Hamilton et als*, 19 W. Va. 366, was a suit of this character. Judge Haymond says on page 392 :

"It seems to me, that it was proper to make the deed of trust lienors and the trustees in such deeds parties defendants in this cause, as was done, especially as the deed of trust made by James Hamilton and his wife, Susan R. Hamilton, (whose separate estate it was sought by the bill to subject to the payment of a general debt) dated November 15, 1885, to James P. Rogers, trustee, to secure the German Insurance Company in the prompt payment of a debt of $8,500.00 due it from James Hamilton and Susan R., his wife, covered the most of Susan R's personal property. The four other deeds of trust in the bill mentioned were upon the separate real estate of Susan R. Hamilton exclusively. The plaintiff according to the facts alleged in the bill were general creditors of Susan R. Their debt, prior to the institution of the suit did not constitute a lien or charge upon the separate estate real or personal of the said Susan. They could not by any proceeding at law or in equity obtain a personal judgment or decree against said Susan R. for their debt; but they had the priillege of proceeding in equity by bill to subject the separate personal and real property of the said Susan R. to the payment of their debt according to the rules of equity in such cases."

And on page 395 he says :

"It is a general principle, that if one party has a lien on or interest in two funds for a debt, and another party has a lien on or interest in one only of the funds for another debt, the latter has a right in equity to compel the former to resort to the other fund in the first instance for satisfaction, if that course is necessary for the satisfaction of the claims of both parties whenever it will not trench upon the rights or operate to the prejudice of the party entitled to the double fund. 1 Story Eq. Juris. § 663. I think this principle may sometimes be properly applied to cases of this character, as between the plaintiffs and the defendant, the German Fire Insurance Company, especially as to the deed of trust upon the real and personal propery."

Here is the real reason, why the German Fire Insurance Company, a deed of trust creditor, was a proper party-de-

fendant in that cause. The company had a lien on the *corpus* of the real and on the personal property while the plaintiff had a lien on the personal property but no lien on the *corpus* of the real property. Of course the trustee in the deed of trust, which secured the German Fire Insurance Company, was also a necessary party, if the *cestui que trust* was made a party.

These principles laid down or deducible from the decisions, which have been rendered by this Court, were violated in many respects in this cause, while it was pending in the circuit court. The bill prayed that the parcel of land named in it, the separate estate of Mary Stortz, might be sold to satisfy the plaintiff's debt against her. It is clear from what has been said, that the plaintiff had no right to have the *corpus* of the separate real estate of Mary Stortz sold to pay his debt. He had only a right to have her separate personal property sold for that purpose and her separate real estate rented out during the continuance of their coverture, and the rents applied in satisfaction of his debt. If she had any personal property as her separate estate, and the plaintiff wished to charge it with the payment of his debt, he should have stated in his bill, that she had a separate estate in personal property, and asked to have it sold and her separate real estate rented out, if necessary, during the continuance of the coverture to pay his debt. But though the prayer of his bill was erroneous, yet the allegations of fact showed, that he was a general creditor of a married woman having separate real estate, and these facts having been stated with all the necessary particularity, the court properly refused to sustain a general demurrer to the bill. For it might under the general prayer for relief have afforded the plaintiff the relief, to which on the allegations of his bill he was clearly entitled.

For the reasons given hereinbefore it is clear, that the court erred in its order of May 5, 1881, making C. C. Weibert, who claimed to own a debt secured by a deed of trust on the real estate of the *feme covert*, a party defendant. If this had been a case, in which it was proper, that he should be made a defendant, which it was not, it is clear, that, if he was a proper defendant, James W. Misner who owned the bond secured by the deed of trust, and who is alleged to

have assigned it to C. C. Weibert, would also have been a necessary party as well as the trustee in this deed of trust, D. W. Polsley. But there was no necessity or propriety in making any of these parties defendants in this cause. Their rights and duties were in no manner involved or affected by the proceedings under this deed of trust, which was in the form prescribed by sec. 5, ch. 72 of code, p. 464, the trustee, D. W. Polsley, whenever required by C. C. Weibert, if he be, as he claims, the assignee of James W. Misner, or if not, whenever required by James W. Misner, after the debt secured by said deed of trust had become payable, and default had been made in the payment thereof or any part thereof, was obliged to sell the real estate named in the bill and the deed of trust, or so much thereof as was necesssary, at public auction for cash after having given the notice prescribed by the statute, and after paying all expenses attending the execution of the trust out of the proceeds to pay off said debt secured by the deed of trust, and the surplus, if any, he was required to pay to Mrs. Mary J. Stortz. But if the parcel of land conveyed by the deed of trust could be conveniently divided, and a portion of it sufficient to pay off these costs and debt could be sold without sacrifice, it would be the duty of the trustee to sell only such portion as would be sufficient to pay these costs and debt. And the institution of this suit in no manner alters the duty of this trustee, D. W. Polsley, in executing the trust.

But it may be said, that he and the *cestui que trust* in this deed should be parties to this cause, or otherwise, though Mary J. Stortz, as the deed to her shows, gave $1,600.00 for this parcel of land in cash, and there is only $600.00 exclusive of interest secured by this deed of trust, the trustee, D. W. Polsley, either because this parcel of land can not be divided and a portion of it sold without great sacrifice, or for some other reason good or bad may be required to sell and may sell the whole of this parcel of land, and having paid the costs of executing this trust and this debt of $600.00 and interest pay the residue of the purchase money perhaps $1,000.00 to Mrs. Mary J. Stortz; and thus the plaintiff may be unjustly deprived of his entire debt. But we have no right to assume, that these things will occur, that the deed

of trust will be foreclosed by a sale, and if it is, that more of this parcel of land will be sold than is sufficient to pay the debt secured and the costs of executing the trust; but if the trustee after the institution of this suit was required to foreclose this deed of trust by a sale and was to advertise the whole of this parcel of land for sale, the plaintiff in this cause, Robert Howe, having acquired a subsequent lien on the property or on the rents and profits thereof after the payment of the cost of executing the trust and the debt secured by the deed of trust would have a right to have his debt, established to be due him in this cause, paid out of the surplus of the purchase-money before any part of such purchase-money was paid to Mary J. Stortz; and if the plaintiff, Howe, had any ground for believing, that the trustee intended to pay any surplus to Mrs. Mary J. Stortz before paying her debt to him, he would have a right to enjoin him from so doing.

I have said the plaintiff in this cause would have a right to require the trustee, Polsley, to pay his debt before any portion of the surplus funds in his hands produced by a sale was paid to Mary J. Stortz. The sale of this real property and the payment therefore in cash to the trustee, Polsley, would convert it into personalty, and as personalty it would be properly applicable to the payment of the plaintiff's debt. For after the institution of a suit for the purpose of collecting this debt it became a lien on all the personal property of the debtor, Mary J. Stortz, and on the rents of her real estate during coverture; and if any of her real estate was converted into personalty, the debt would thereby become a lien on the personalty, into which such real estate was coverted, in the supposed case on the funds in the hands of D. W. Polsley, the trustee. This was recognized as law by this Court in *Charleston Lumber & Manufacturing Company* v. *Brockmeyer et als.*, 18 W. Va. 586. On page 596 in delivering the opinion of the court I said: "The circuit court should have ordered the house and lot to be rented to pay the plaintiff's debt from year to year till the further order of the court, which renting should have been continued till the plaintiffs debt was paid, or until the house and lot was sold to satisfy the vendors lien in an independent suit for the purpose instituted

by the vendors, if they thought proper to institute such suit. But if such sale should be made it would convert the married woman's seperate estate in real property to a seperate estate in personal property; and therefore the surplus, which this house and lot might bring over what was necessary to satisfy the vendors lien, being her real property might and should be applied to her debt to the plaintiff."

For precisely the same reason, if W. D. Polsley, the trustee, should ever sell this parcel of land under the deed of trust, in which he is trustee, the surplus, if any, in his hands after the payment of the costs of executing the trust and the debt secured by the deed of trust should be paid to Robert Howe on his debt, before any of it be paid to Mary J. Stortz. There was therefore no necessity or propriety for making this trustee, or the *cestui que trust* or C. C. Weibert, who claims to be the assignee and owner of the debt secured by the deed of trust, parties to this cause.　There was no more propriety or necessity for so doing than there would be for making a vendor, who had a vendor's lien on the parcel of land the separate estate of Mary J. Stortz, a party to such a suit as this.　It was expressly decided that this was unnecessary and improper in the case of *Charleston Lumber and Manufacturing Company* v. *Brockmeyer et als.*, 18 W. Va., p. 587, points 5, 6 of the syllabus.

The decree of May 18, 1881, violates many of the principles, which we have laid down, and must therefore be reversed.

But even if the proper parties had been before the court, and none but the proper parties, there are besides the obvious violations of the law, which we have stated above, many other errors in this decree, even when examined from the general view of the law as erroneously taken by the court below. The most glaring of these errors will be pointed out, that they may be avoided in any future decree in this cause, and as a warning against such carelessness in the transaction of chancery business in circuit courts.

One portion of the recital in the beginning of this decree is, "that the bill was taken for confessed and regularly set for hearing."　This recital is not in accordance with what appears from the record to be the proceedings in the cause, nor is it reconcilable with other recitals in this decree.

The decree pronounces as the opinion of the court, "that the defendant C. C. Weibert has a just and valid first lien on said property, as set out and described in his petition." There is in the record no foundation for this opinion. . It is true, that there is filed with his petition a certified copy of a deed of trust on this property "to secure to James W. Misner payment of a bond bearing date June 8, 1880, for the sum of $600.00 executed by Mary Jane Stortz, and payable to the order of said James W. Misner one year after date, with interest at six *per cent.*" And it is alleged in the petition of C. C. Weibert, not even sworn to, "that he as the assignee of James W. Misner is the holder and owner of this bond." But the bond is not filed with the petition; and there is not a particle of evidence, that it was ever assigned by James W. Misner to any one, and neither he nor the trustee in said deed of trust are made parties to this cause. The decree ascertains the interest on this bond to be $34.00. This evidently assumes that it bore interest from date; but the deed of trust does not so state, though it may be that this was what was intended to be said. If the bond had been filed with the petition the question from what time it bore interest could, I suppose, have been ascertained with certainty. The plaintiff's bill having filed with it as exhibits the negotiable notes of Simon Stortz and Mary J. Stortz, and their bill alleging that they executed these negotiable notes, the court could properly regard them as having been so executed, though their execution was denied in the answer of these parties, as these answers were not verified by affidavit. (See Code, ch. 125, sec. 40, page 605.)

But the claim in the bill that the defendants owed the plaintiff $42.30 is positively denied by the answer of the defenants; and as no proof was taken, the court would necessarily and of course reject this item in deciding what amount was due to the plaintiff.

The $1.73, the costs of protest of one of the negotiable notes given by the defendants in the bill, was sufficiently proven by the protest filed with the bill as an exhibt, (Code, ch. 69, sec. 8, p. 537) and might therefore be properly included in ascertaining the amount of plaintiff's demand. These were doubtless the views of the court below, yet in this

decree the amount of the plaintiff's demand is ascertained to be $524.76, which is somewhat more than is due him, when his claim is ascertained on the obvious principles above stated. This, I presume, was a mere mistake in the calculation of interest.

The court in this decree seems to regard the separate estate of Mary J. Stortz liable to the payment of the plaintiff's debt against her only in case her husband, Simon Stortz, who signed the negotiable notes with her, is unable to pay them, and provides for subjecting her property to the payment of this debt, in case the debt can not be made, by the levying of *fieri facias* on his property, a decree being rendered against him personally for the debt.    This view of the court is erroneous.    The liability of the rents of the real estate of Mary J. Stortz during her coverture to the payment of this debt was absolute and not conditional upon the ability of her husband to pay it, after the plaintiff had first made an effort to collect the debt from him.    But the *corpus* of her real estate was not liable at all to the payment of this debt.

The real estate of the defendant, Mary J. Stortz, was as we have seen only liable to be sold under the deed of trust securing the $600.00 bond claimed now by C. C. Weibert, whenever the owner of this bond required the trustee to sell said land.    Yet, though there is nothing in the record or on the face of the decree showing any requirement by the *cestui que trust* in this deed of trust that this real estate should be sold, the court ordered it to be sold, nor can I see any propriety, if it were sold, in directing its sale by any other than the trustee.    There may have been some reason for substituting H. R. Howard as a special commissioner of sale in lieu of him, which operated on the mind of the court below but no reason for this change appears on the record.

This decree, while erroneous, even if the general liability of the separate estate of a married woman and the general mode of enforcing that liability had been in accordance with the views of the court below, is reversed and annulled, because this liability and the mode of enforcing it are different from the views thereof entertained by the court below, and especially because the court ought not on the facts appearing in the record to have permitted C. C. Weibert to file his

petition and be made a defendant, nor any other person other than than the original defendant. And the court ought not to have decreed the sale of the real estate named in the bill conditionally or otherwise, the full extent of its power over the same in this cause being to rent it out during the coverture of Mary J. Stortz, if necessary, or until its sale by the trustee under the deed of trust and the proceeds of such writing should be applied to the satisfaction of the plaintiff's debt, when properly ascertained, and to the costs of this suit. And the appellant must recover of the appellee Robert Howe her costs in this Court expended ; and this cause must be remanded to the circuit court of Mason county with instructions to further proceed with it according to the principles laid down in this opinion and further according to the rules and principles governing courts of equity.

REVERSED. REMANDED.