# SUPREME JUDICIAL COURT,

## JANUARY TERM 1870, AT BOSTON.

PRESENT:

HON. REUBEN A. CHAPMAN, CHIEF JUSTICE.
HON. HORACE GRAY, JR.,  ⎫
HON. JOHN WELLS,           ⎪
HON. JAMES D. COLT,        ⎬ JUSTICES.
HON. SETH AMES,            ⎪
HON. MARCUS MORTON,      ⎭

## MIDDLESEX COUNTY.

### BENJAMIN W. DUNKLEE vs. JOHN CRANE.

A mechanics' lien under the Gen. Sts. c. 150, has priority over a mortgage executed after the making of the contract under which the lien is claimed.

MORTON, J.  This is a petition for the enforcement of a mechanics' lien.  It appears from the statement of facts that the petitioner performed labor and furnished materials actually used in the erection of several houses owned by the respondent, by virtue of a contract with him, and that the petitioner has complied with all the requirements of the statutes necessary to enable him to maintain this petition.  After the contract was made, and while the work was in progress, the respondent mortgaged the premises to Daniel Simonds, who thereafterwards, by

virtue of a power of sale contained in the mortgage, and for a breach of the condition thereof, sold them to George H. Simonds, who appears as claimant and resists the petition. The only question presented for our consideration is whether the petitioner's lien or the mortgage has priority.

The first section of chapter 150 of the General Statutes provides that "any person to whom a debt is due for labor performed or furnished, or for materials furnished and actually used, in the erection, alteration or repair of any building or structure upon real estate, by virtue of an agreement with, or by consent of, the owner of such building or structure, shall have a lien upon such building or structure, and upon the interest of the owner thereof in the lot of land upon which the same is situated, to secure the payment of the debt so due to him." The third section provides that "such lien shall not avail or be of force against any mortgage actually existing and duly recorded prior to the date of the contract under which the lien is claimed." The statute contains no express provisions that the lien shall attach and have priority over mortgages and other incumbrances created after the contract, but such is the necessary implication. If it be not so, the provisions of the third section are entirely useless. The nature of the security intended to be created by the statute necessarily leads to this result. Any other construction would defeat the manifest purpose of the legislature to give to those who, by virtue of contracts with the owner, have by their labor and materials increased the value of his property, an interest in it until the debts due them for such labor and materials are paid.

We can have no doubt that, when the labor is performed or the materials furnished, the lien attaches and relates back to the time of the contract, and takes priority of all mortgages made subsequent thereto. *Howard* v. *Veazie*, 3 Gray, 233. *Howard* v. *Robinson*, 5 Cush. 119. *The Granite State*, 1 Sprague, 277.

The claimant relies upon the thirty-third section of chapter 150 of the General Statutes, which provides that "if the person for whom the work is done, or materials are furnished, has an estate for life or any other estate less than a fee simple in the

land, or if the property at the time of recording the statement is mortgaged or under any other incumbrance, the lien before provided for shall bind his whole estate and interest therein, in like manner as a mortgage would have done; and the creditor may cause the right of redemption, or whatever other right or estate the owner had in the property, to be sold and applied to the discharge of his debt, according to the provisions of this chapter." It may be admitted that this section, if construed independently of the other provisions of the statute, at the first view seems to give plausibility to the argument that the legislature intended to postpone liens to mortgages made before the recording of the statement, though made after the contract was entered into and the labor was performed under it. But, considered in its connection, as part of a system, it is apparent that such intention is not necessarily or naturally to be inferred.

This section does not purport to establish a rule to determine priorities between conflicting claims upon the property, or to fix the time when liens shall attach. It was enacted *alio intuitu.* The preceding sections furnish a remedy in cases where the person whose property is affected by the lien is the absolute owner, and provides that, if the lien is established, the court shall order a sale of the property. This provision is not applicable to cases in which the debtor has a less than an absolute estate, and therefore it was necessary to make provision for such cases. Accordingly the thirty-third section provides a remedy in cases where the person for whom the work is done has a less estate than a ‘ee simple, or where the property is subject to a mortgage, or other incumbrance, which is preferred to the lien, and in which the creditor cannot sell the whole property, but only the interest to which his lien has attached.

We are of opinion that the provision, " if the property at the time of recording the statement is mortgaged," is intended to apply to mortgages named in the third section, that is, mortgages existing and duly recorded prior to the date of the con tract under which the lien is claimed. This construction harmonizes the various provisions of the statute, and carries out the manifest intent of the legislature to give to the laborer an

effectual security by a lien upon the property which his labor has created or enhanced in value.

Another consideration tends to strengthen this view. The thirty-third section is a reënactment of § 26 of chapter 117 of the Revised Statutes, which provides that if the land, at the time of recording the contract, is mortgaged or under any other incumbrance, the lien shall bind the whole estate and interest of the person who procures the work to be done, in like manner as a mortgage would have done, and the right of redemption may be sold to satisfy the lien.

No argument can be drawn from this provision of an intent to postpone the lien to a mortgage made after the contract under which the lien is claimed is recorded. On the contrary, the clear implication is that the lien has priority over such mortgages.

In the report of the commissioners on the revision of the statutes, no suggestion is made that they designed to change this provision, and it is not to be presumed that the legislature intended to make so vital a change in an important system of laws, unless such intention is manifested in clear language. *Francis* v. *Sayles*, 101 Mass. 435. We are therefore of opinion that the petitioner's lien has preference of the mortgage under which the respondent claims.

In the case of *Mulrey* v. *Barrow*, 11 Allen, 152, cited by the claimant, the question of the construction of the thirty-third section was not raised, probably because of no practical importance. It appears from an examination of the papers in that case, that the petitioner only claimed that his lien attached to the equity of redemption, and the question involved in the case at bar was not brought to the attention of the court. The concluding statement in the opinion has not, therefore, the weight of an adjudication.

No other question is before us upon this report, and we cannot pass upon the rights of other creditors who have like liens, but the case must stand for trial in the superior court, where all such questions can be heard and determined.

*Case to stand for trial.*

*I. S. Morse*, for the petitioner.

*G. A. Somerby*, ( *T. S. Dame* with him,) for George H. Simonds.