## CHARLESTON.

West Virginia Building Co. v. Saucer.

Submitted Sept. 18, 1898—Decided Dec. 3, 1898.

1. Mechanic's Lien—*Performance of Contract.*
    If a builder has completed his work according to contract in all,material, substantial features, his mechanic's lien is not lost merely because there are minor, unsubstantial, unimportant omissions or defects. (p. 485).

2. Equity—*Issue Out of Chancery—Decree Reversed.*
    The direction of an issue out of chancery is a matter of sound discretion. The mere omission to do so would not reverse a decree unless it was asked for. (p. 487).

Appeal from Circuit Court, Grant County.

Bill by the West Virginia Building Company against Thomas J. Saucer. Decree for plaintiff, and defendant appeals.

*Affirmed.*

J. M. McMullan, for appellant.

F. M. Reynolds and L. J. F. Forman, for appellee.

Brannon, President :

The West Virginia Building Company brought a chancery suit in the circuit court of Grant County against Thomas J. Saucer, to enforce a mechanic's lien for the construction of a building in the town of Bayard, under written contract with Saucer, which resulted in a decree in favor of the company to sell the property, and Saucer appeals.

It is claimed for Saucer that the bill was improperly held to be good on demurrer. It is claimed that the bill does not sufficiently set out the contract, whether verbal or written, and its terms and stipulations and conditions. It is true that it is always best to set out a contract with definiteness and particularity, so far as its stipulations are pertinent to the matter to be litigated, but other matters, though in the contract need not be specified. A bill to enforce a mechanic's lien does not require very great particularity, because the account filed with the clerk, claiming the lien itself has great effect. This bill alleges that Saucer contracted with the plaintiff to erect on certain lots a large building, and to furnish certain material for same in the construction thereof, and that, in pursuance of and under said contract, plaintiff erected the building, and furnished material therefor; that it was under contract between the parties, and that the contract price for labor and material used and furnished therein all amounted to the sum of four thousand eight hundred and thirty-seven dollars and seventeen cents; that after allowing all credits to which Saucer was entitled, there was due from him one thousand four hundred and eighty-three dollars and sixty-seven cents; that plaintiff, on the 2d of February, 1896, ceased to labor on and furnish material for the building; and the bill says that the work was done and material furnished and building erected under a contract taken the——day of 1895, not saying whether written or oral. The account, claiming the lien filed in the clerk's office under the statute, was exhibited with the bill. Surely, this bill charged all that seems essential—the contract, the work done under it, the amount thereof, the date when finished, and the filing of the account. It is immaterial whether a contract be written or oral, to create a mechanic's lien. The account gives definite specifications of work, labor, and material.

It is claimed for Saucer that, when the mechanic's lien account was filed in the clerk's office, the work had not been fully completed, and therefore the account could not be filed, and created no lien. This objection goes to the very root of the plaintiff's demand. The compensation to be paid the contractor was payable in installments as the

work progressed, and it does seem to me that the builder may before the completion of the work, file his lien,  Our statute gives him a lien over other liens arising subsequent to the time "when such labor shall have been performed or material furnished;" that is, as to subsequent creditors, and surely so as to the owner.  I think that this lien starts from the first moment when the work or delivery of material commences, even as to such creditors, and certainly as to the owner.  Phil. Mech. Liens, s. 216 ; *Oriental Hotel Co.* v. *Griffith*, 53 Am. St. Rep. 790.  See opinion in *C. L. & M. Co.* v. *Buckmeyer*, 18 W. Va., 590.  Suppose the builder files his lien after the lien starts, and afterwards completes the work; shall his lien be overthrown because his account is filed before completion?  I would think not. I know that the Code does say that the lien shall be discharged unless the builder shall, "within sixty days after he ceases to labor on, or furnish material or machinery, file his lien account."  But as said in *Luter* v. *Cobb*, 1 Cold. 528 :  "The limitation is intended for the benefit of creditors of the owners and purchasers, to protect them from fraud and injury by the operation of this secret lien."  It gave that time to the mechanic to continue his lien—that is, his last point—but that does not say that he need wait until then if his lien is once commenced.  He need not file his lien before that time.  He may go on to work, and he has his lien from its commencement or when he began furnishing material, and the statute gives him a lien over any creditors whose liens arise after his lien commences, without any recordation, because the law gives notice to the world that the mechanic's lien attached to the building, which lien he may enforce by filing within sixty day after completion.  While the work is going on, no notice is necessary; the work itself is that.  But if the mechanic, after completion, waits longer than sixty days, his lien is gone; certainly, as to creditors.  *Bank* v. *Dashiell*, 25, Grat. 625.

As installments in this case were due before the completion, I would think a lien filed before completion would be good.  My idea is that a lien, though not necessary if filed at once after it commences, is good for the whole concontract price when completed, and even if the work

be not completed, yet, if the party would be by law allowed to recover for what work he did or what material he furnished in an action of *assumpsit* upon a *quantum meruit* or *quantum valebant*, his lien would be good in equity for the same. But in this case it is not necessary to go so far, as this decision does not require it. The work was substantially completed before the account was filed. The defendant had made certain payments. He had taken possession of the house, and there remained to be done upon it very inconsiderable work, compared with the total, It certainly is true in law if there be a substantially completed, though not perfectly completed, contract, the claim may be filed, and the defendant may recoup or abate from the contract the value of the failure. He can claim damages for noncompletion. He has no right to forfeit all that the builder has done. If in an action at common law the builder would be allowed to recover any sum after the abatement to the owner of his damages, for the noncompletion of the contract, then in a suit in equity he would likewise recover. Justice is thus done to both parties. If the deficiencies are unimportant, and may be easily made up, the lien is still good. *Glacius* v. *Black*, 50 N. Y. 145; *Hayward* v. *Leonard*, 7 Pick. 181; *Stewart* v. *McQuaide*, 48 Pa. St., 191;. But, in this case, Saucer accepted the building, took possession of it, rented it out; and surely, under such circumstances, he must pay what the material and work are worth—in other words, the contract price, with such abatement as the shortcomings of the contractor called for. *Bell* v. *Teague*, 85 Ala. 211, (3 South. 861); *Vanderbilt* v. *Iron Works*, 25 Wend. 665. It is very clear that any recoupment or abatement to which the owner is entitled can be allowed in chancery, in a suit by the mechanic or builder on his lien. Phil. Mech. Liens, s. 140. When the contract is entire, and the building substantially finished, and it is treated by all parties as completed, though some unimportant parts be not completed, if the time limited by the statute is suffered to elapse before these unimportant things are done, more especially if intervening rights in favor of a third party have attached, the lien cannot he successfully asserted. *Luter* v. *Cobb*, 1 Cold. 526. That treats the unimportant deficiencies as

inadequate to keep up the right to file the lien; that is, the date for filing does not run on till their completion. Conversely, it is true that those unimportant deficiencies did not prevent the builder from filing his lien, and recovering what was due him on it, less abatement for such deficiencies.

The claim is urged that the sum allowed Saucer for abatement is too small. It was one hundred and fifty-three dollars and twenty-one cents.. The evidence shows that the items of work to fully complete the building were not important, but I have this to say under this head : that the recoupment depended upon a large number of witnesses, largely on their mere opinion, and this evidence conflicted, especially as to what allowances should be made for abatement. There was a great mass of evidence taken on this, and the allowance is based on mere estimates, and it cannot be expected that upon this mere question of fact, standing on conflicting evidence and inferences and deductions therefrom, this Court should reverse the finding of the circuit court. I think it substantially right. *Hall* v. *Hall*, 30 W. Va. 780, (5 S. E. 260); *Richardson* v. *Ralphsnyder*, 40 W. Va, 13, (20 S. E. 854); *Dorr* v. *Dewing*, 36 W. Va. 466, (15 S. E. 93).

It is claimed that the court should have directed an issue out of chancery to pass upon the question of what allowances for abatement should have been made. It is very difficult to reverse a decree for failure of the court to direct an issue, because a large discretion is given the court therein, and the rule when it should and should not do so cannot be well defined. Our Code (chapter 131, section 4) says that the court, when "there is such confliction in the evidence as in the opinion of such court to render it proper, may direct an issue." It prohibits it in any other case. This tells itself of a large discretion. *Powell* v. *Batson*, 4 W. Va. 610, holds that the proper criterion by which to test the propriety of such an issue is that, where in a given case, the decree rendered is sustained with reasonable certainty by the facts and circumstances, there would be no error in refusing to direct an issue to try any matterial matters put up in issue therein. The evidence was conflicting. It was not so particularly as to any par-

ticular fact in issue, but on this mere estimate of the value of deficiency ; and the evidence does, with reasonable certainty, sustain the court's finding, as much so as in such a case could be expected. A court can and should itself decide matters of fact, and even state an account, and save the cost and time of a protracted jury trial, if it have such data and evidence to enable it to do so properly. *Darby* v. *Gilligan*, 43 W. Va. 755, (28 S. E. 737); Bart. Ch. Prac. 848.

A further consideration in this case is that no issue was asked. I am impressed with the opinion that when a court has used its discretion, and gone on without an issue, it cannot be reversed for omission to direct one, unless it be asked. This is sustained by *Dorr* v. *Dewing*, 36 W. Va. 466, (15 S. E. 93), holding that, if a cause has been heard without order of reference asked or suggested, a party cannot, for the first time in an appellate court, assign the failure to direct a reference, unless it appear that manifest injustice has been done him thereby. I should think it would be much more so in the case of failure to direct an issue than as to the failure to direct a reference to commissioner. Judge Snyder says, in *McKinsey* v. *Squires*, 32 W. Va. 43, (9 S. E. 55), that the party should ask an issue if he wants it.

Complaint is made that there was no reference to a commissioner. I have already, by reference to the case of *Darby* v. *Gilligan*, answered this objection. There was no complicated account to be made before a commissioner; no ascertainment of liens and priorities. When the court, having the contract price before it for the building, made up the sum which the defendant should be allowed for recompense, the matter of the account was ended. Why could not a judge do this, as well a commissioner?

As to the complaint that the lien under the deed of trust in favor of the National Building and Loan Company was not ascertained and decreed. That company and its trustee were before the court. The decree gave the building company a first lien, and fixed its amount ; and then declared that the next lien was that of the National Building and Loan Company under its deed of trust, but did not fix its amount. Note the company and its trustee are

not complaining of this ; only Saucer is.   It is strange that he should complain of the failure of the court to declare that his property should be sold unless that lien, too, were paid.   The decree is favorable to him in this respect, in not making him pay that deed of trust debt at once.   Moreover, it was a subordinate lien.   Moreover, it was a lien payable by monthly payments, as building loans usually are, and it would have been improper to decree its payment long before maturity.   Of this, had it been done, Saucer could have complained; and, as to the amount of it, it could not have been fixed.   It was not yet due.   He certainly knew its amount.   It was not necessary that the sale should raise an amount to cover it.   He had the right to go on, and pay it in monthly payments.

Complaint is made that the property was not rented, instead of sold.   Now, the mechanic's lien statute commands a sale, and does not require the mechanic to wait five years for his money.   He is entitled, by the very letter of the statute, to a sale.   The statute, in the case of judgment liens, says that, if five years' rental will pay them, no sale shall be made, but this case is governed by the mechanic's lien statute.   We affirm the decree.

*Affirmed.*