## CHARLESTON.

Cushwa *et al. v.* Improvement L. & B. Association, *et al.*

(Dent, Judge, *dissenting*).

Submitted June 18, 1898—Decided December 7, 1898.

1. Mechanic's Lien—*Negotiable Notes.*

   Where a material man, workman, laborer, mechanic. or other person, performs any labor or furnishes any material or machinery for constructing any house, mill, manufactory, or other building or structure, by virtue of a contract with the owner or his authorized agent, he shall have a lien, to secure the payment of the same, upon such house or structure, and upon the interest of the owner of the lot of land on which the same may stand; and such lien will not be affected by the party claiming the same accepting negotiable notes for the amount of his account, which notes are not made payable after the time fixed for bringing a suit to enforce the mechanic's lien.   (p. 496).

2. Receipt—*Evidence of Payment—Oral Evidence.*

   A receipt, so far as it is a mere admission, is not conclusive evidence of the payment therein acknowledged, but the party signing it may invalidate it by oral evidence of fraud or mistake ; for the document amounts only to *prima facie* proof, and is capable of being explained. (p. 497).

3. Notes—*Payment of Debt.*

   A note will not be regarded as an absolute extinguishment or payment of a precedent note or pre-existing debt, unless it be so expressly agreed, whether the note received was that of one bound or a stranger.   (p. 498).

4. Mechanic's Lien—*Notes—Acceptance of Notes—Surrender of Notes.*

   The acceptance of the note of a debtor, payable after the time granted by the statute for filing a mechanic's lien, and maturing

before the expiration of the time limited for bringing suit, will not bar a suit and recovery upon the lien, if the notes are produced to be surrendered at the trial. (p. 499).

5. Mechanic's Lien—*Deed of Trust—Priority of Lien.*
    Where work has been commenced and material furnished under a contract, for constructing buildings, with the owner of the land on which buildings are to be erected, the mechanic's lien attaches from the time the performance of the work and furnishing materials begin, and such mechanic's lien is entitled to priority over a deed of trust subsequently executed on the same property. (p. 501).

Appeal from Circuit Court, Berkeley County.

Bill by the Improvement Loan and Building Association and H. T. Cushwa & Bro., against the Auburn Wagon Company for the administration of defendant's assets as an insolvent. From a decree postponing the claim of Cushwa & Bro. under the mechanic's lien to a trust deed, they apreal

*Reversed.*

Faulkner & Walker, for appellants.

W. H. Travers, M. T. Ingles, A. C. Nadenbousch, and U. S. G. Pitzer, for appellees.

English, Judge :

On the 10th day of February, 1897, the Improvement, Loan and Building Association of Martinsburg, a corporation under the laws of the State of West Virginia, A. C. Nadenbousch, trustee, and Harvey T. Cushwa and Harry S. Cushwa, partners trading under the firm name of H. T. Cushwa & Bro., appeared in open court in the circuit court of Berkeley County, and filed their bill in chancery against the Auburn Wagon Company, a corporation, U. S. G. Pitzer, trustee, and others, in which, among other things, they alleged that on February, 18, 1896, the defendant the Auburn Wagon Company, a corporation under the laws of Pennsylvania, and a citizen of said state, was the owner in fee of a lot of ground in the town of Martinsburg, Berkeley County, W. Va., containing two acres, three roeds, and ten poles, and on that date executed a deed of trust to said Nadenbousch, trustee, on said lot,

together with all improvements then on same, or thereafter to be put thereon, etc., a copy of which trust deed was exhibited with said bill, from which it appears that said deed was made for the purpose of securing the payment of an indebtedness of forty thousand dollars with interest, to said Improvement, Loan and Building Association, owed by said Auburn Wagon Company, which was payable in installments as therein set forth, and upon terms and conditions therein set forth. On February 13, 1897, said building and loan association gave notice to said Nadenbousch, trustee, to proceed to execute said deed of trust by selling the property thereby conveyed in the terms required by said deed. It was further, alleged that on October 13, 1896, said firm of H. T. Cushwa & Bro.. filed their mechanic's lien in the office of the clerk of the county court of Berkeley, wherein the real estate owned by said Auburn Wagon Company, above described, is situated; that is to say, they filed a just and true account of the amount due them, after allowing all credits, together with a description of the property owned by said wagon company, and intended to be covered by the lien claimed by said H. T. Cushwa & Bro., sufficiently accurate for identication, duly sworn to by said Harry S. Cushwa, an office copy of which was exhibited with plaintiffs' bill, as Exhibit B. The bill also alleged that there was due to said H. T. Cushwa & Bro. on account of said lien the sum of three thousand eight hundred and eighty-eight dollars and forty cents, with interest; that the same was for work and labor performed and materials furnished in constructing the buildings of the plant of the said Auburn Wagon Company on lot aforesaid; that said work was performed and materials furnished partly under a contract in writing made by said Cushwa & Bro. with said wagon company; that said work and labor were performed and said materials furnished between the 24th of February, 1896 and 1st of September, same year; and that no part of the amount due them as shown by said Exhibit B has been paid, but the same is wholly due, with interest thereon. It was further alleged that on December 3, 1896, the Auburn Wagon Company executed a deed to U. S. G. Pitzer, trustee for the Morrison & Westfall Company of said real estate, with

other property therein described, to secure to said Morrison & Westfall Company the payment of certain drafts, notes and indebtedness, a copy of which trust deed was also exhibited as part of the bill. The plaintiffs in their bill also described several judgments which had been obtained by other parties, who were made defendants, against said Auburn Wagon Company, before a justice of the peace of Berkeley County. Plaintiffs also alleged that said wagon company was wholly insolvent ; that its liabilities exceeded one hundred thousand dollars; that the assets consisted almost exclusively of the real estate above mentioned, with the improvements thereon, and machines and tools used in the business of manufacturing wagons, the total value of which was not more than enough, if properly administered, to pay the indebtedness due plaintiff, said Improvement, Loan and Building Association ; that said wagon company has in process of manufacture, and almost ready for shipment, a large number of wagons, to-wit : eight hundred, but which cannot be completed and placed on the market, for want of additional material to complete the same, which, owing to its crippled financial condition, it was unable to secure ; and the plaintiffs prayed the appointment of a receiver to take charge of the property and business of said company, and operate the same, until such time as a sale can be properly made thereof, or until the court should otherwise order; that the creditors of the company might be convened by a reference of the cause to a commissioner, and that the repective amounts and priorities of their liens and debts might be ascertained, and the assets of the company properly distributed among them. The defendant wagon company answered the plaintiffs' bill, admitting the execution of the deed of trust to A. C. Nadenbousch, trustee, mentioned in the bill, and alleged that previous to the making of said conveyance the building and loan association had entered into a contract with it, bearing date December 10, 1895, which was not sealed and delivered until the 28th day of January, 1896, but possession of the property to said wagon company had been delivered some time prior to January 13, 1896, whereby said building and loan association agreed to loan said company forty thousand dollars, to be paid at the time and

in the manner therein set forth, and the said wagon company, among other things, thereby agreed that it would make and acknowledge for record a proper deed of trust upon said lot of ground, and upon all its buildings, plant, and machinery, to secure the party of the first part the loan aforesaid, and the performance of, all and singular, the covenants and agreements therein contained, and keep said property insured in some solvent company, which agreement was signed by H. T. Cushwa, president of the Improvement, Loan and Building Association, and F. C. Ward, president of the Auburn Wagon Company, acknowledged by H. T. Cushwa, president, on January 17, 1896, and by F. C. Ward, president, on January 28, 1896, and was admitted to record on March 13, 1896. The wagon company further answering, said that it had a contract with H. T. Cushwa & Bro. by which certain buildings were erected and materials therefor furnished by said Cushwa & Bro., and that on August 15, 1896, it had a settlement, through its president, F. C. Ward, with said Cushwa & Bro., and then gave to them three negotiable promissory notes of the said wagon company, each for the sum of one thousand one hundred and sixty dollars and thirty-one cents, making the aggregate, three thousand four hundred and eighty dollars and ninety-three cents, which notes were given by respondent as payment and satisfaction, and received by H. T. Cushwa & Bro. in payment in full, of the balance owing to said firm under that contract, and the extra work done for it by them, except a small part thereof, to-wit: the execution of what was called the "Mailing Office," which was to cost four hundred and seven dollars and forty-seven cents, taking said Cushwa & Bro.'s receipt therefor, which was filed as an exhibit in the cause. The respondent also denied that said Cushwa & Bro. on October 13, 1896, filed their mechanic's lien in the office of the clerk of the county court of said county (that is to say, a just and true account of the amount due them after allowing all credits), but on the contrary, it is alleged that the account filed by them was a false one, in which payment of said three thousand four hundred and eighty dollars and ninety-three cents as aforesaid was entirely omitted; and respondent denied that said Cushwa & Bro. had any

mechanic's lien whatever on respondent's property, and claimed that said false and fraudulent account filed by them failed to preserve a lien for any sum whatever.   On February 16, 1897, a receiver was appointed of all the property of said wagon company, to take immediate possession of said property, and hold the same, as an officer of the court, under its orders and directions.   On March 6, 1897, the cause was referred to a commissioner in chancery, with instructions to ascertain and report the debts owed by said wagon company, their respective amounts and priorities, and if, in so doing, he should find that the deed of trust by said wagon company to U. S. G. Pitzer, trustee, dated December 3, 1896, was made at such time as said wagon company was insolvent, then, in ascertaining such priorities, he should treat such deed as void as to the preference therein given, and as a general assignment for the benefit of all the creditors of said wagon company who should assert their claims in the manner prescribed by statute in existence at the time, ratably; also, to report the real estate and personal property owned by said wagon company, and what has been acquired, if anything, by said company, since the making of the deed of December 3, 1896, to Pitzer, trustee.   On September 13, 1897, the commissioner filed his report, ascertaining the debt due H. T. Cushwa & Bro., evidenced by a mechanic's lien, amounting to four thousand one hundred and two dollars and ninety-one cents, principal and interest, as of September 14, 1897, to be the first lien upon the real estate owned by the Auburn Wagon Company; a debt due the Loan and Building Association, evidenced by a deed of trust executed to A. C. Nadenbousch, trustee, amounting to thirty-seven thousand, four hundred and ninety-seven dollars, principal and interest, as of September 14, 1897, to be the second lien upon said real estate; a debt due the employes of said wagon company for labor performed, amounting, principal and interest, as of September 14, 1897, to one thousand three hundred and sixty-one dollars and sixteen cents, to be the first lien upon the personal assets of said wagon company; and all debts proven, as due the general creditors of said wagon company, amounting, principal and interest, of September 14, 1897, to one hundred and thirteen thou-

sand nine hundred and twenty-four dollars and ninety-seven cents, to be a second lien on said personal assets; and that the personal property of said wagon company, when it went into liquidation, was sold by the receiver for six thousand two hundred and fifty dollars, which was then in the hands of the receiver, subject to the order of the court.

The Auburn Wagon Company excepted to the commissioner's report so far as it audited as a first lien on its property the claim of said Cushwa & Bro. for the sum of four thousand one hundred and two dollars and ninety-one cents: (1) Because the testimony shows that said wagon company on the 15th of August, 1896, made a settlement with said Cushwa & Bro., in which it gave to them its three negotiable notes each for the sum of one thousand one hundred and sixty dollars and thirty-one cents (in all, three thousand four hundred and eighty dollars and ninety-three cents), which were accepted by said firm in full payment of said claim, and full discharge of the contract under which the said claim arose, except as to the mailing office mentioned in said agreement, to be supplied by the said claimant for the sum of four hundred and seven dollars and forty-seven cents. (2) Because the pleadings and testimony show that, prior to the time the said claimant furnished any work or materials for the improvements upon which the said mechanic's lien set up is founded, the said claimants had notice of a contract in writing of the wagon company with the loan and building association whereby the said association agreed to advance the sum of money mentioned in the bill, in the manner therein stated, and which are audited as a second lien on said wagon company's property, and also the agreement evidenced by the said contract to secure the payment of the said sums of money in the manner set out in said bill, and audited as aforesaid, by deed of trust on said property, which should be a first lien thereon. Depositions were taken and filed, and a decree was rendered on the 9th of November, 1897, sustaining the exception of said wagon company to said commissioner's report, so far as it held the mechanic's lien claimed by H. T. Cushwa & Bro.. amounting to four thousand one hundred and two dollars and ninety-one

cents, to be the first lien against said real estate, and holding that it should have been audited as a general debt of the Auburn Wagon Company, but overruling said second exception, from which decree H. T. Cushwa & Bro. obtained this appeal.

Counsel for the appellees claim that the appellants acquired no mechanic's lien, for the reason that during the progress of the work payments were made on account of said wagon company to H. T. Cushwa & Bro. by the loan and building association, through H. T. Cushwa, its president, by his checks as such, and on the completion of the contract a settlement was made between said wagon company and appellants, and an ascertained balance of three thousand four hundred and eighty dollars and ninety-three cents was settled "in full for contract and extras, except mailing office," by the acceptance of three negotiable notes, each for one thousand one hundred and sixty dollars and thirty-one cents, executed on the 15th of August, 1896, by the Auburn Wagon Company, payable to H. T. Cushwa & Bro., four, five, and six months, respectively, from their date. Now, while it is true said notes were executed as above stated, and a receipt given on the same day in the following words: "Received of Auburn Wagon Company, Martinsburg, W. Va., three thousand four hundred and eighty dollars and ninety-three cents, ($3,480.93), for bill August 13, in full for contract and extras, except mailing office. [Signed] H. T. Cushwa & Bro."—yet this receipt was merely *prima facie* evidence of the fact therein stated. Upon this question we find the law thus laid down in 1 Greenl. Ev. (15th Ed.) s. 305: "In regard to receipts, it is to be noted that they may be either mere acknowlegments of payment or delivery, or they may also contain a contract to do something to the thing delivered. In the the former case, and so far as the receipt goes only to acknowledge payment or delivery, it is merely *prima facie* evidence of the fact and not conclusive, and therefore the fact which it recites may be contradicted by oral testimony." So, also, 2 Tayl. Ev. s. 1124, say: "Therefore, except in some few special cases, a receipt, so far as it as a mere admission, is not conclusive evidence of the payment therein acknowledged, but the party signing it may

invalidate it by oral evidence of fraud, or of mistake or surprise on his part; for the document amounts only to *prima facie* proof, and is capable of being explained." To the same effect, see 19 Am. & Eng. Enc. Law, p. 1120, and authorities there cited. Bish. Cont. s. 176, says: "In general, receipts of payment, whether embodied in written instruments or not, are deemed to be of the imperfect sort, which, though *prima facie* evidence of what they declare, may be explained or contradicted orally. They are so even when expressed to be in full of all demands;" citing several authorities in note. When we look to the evidence in explanation of this receipt, it appears that the Auburn Wagon Company, instead of having paid said Cushwa & Bro. three thousand four hundred and eighty dollars and ninety-three cents in full for contract and extras, except mailing office, executed to them its three notes, bearing date August 15, 1896 (the same date as said receipt), for one thousand one hundred and sixty dollars and thirty-one cents each, payable, respectively, in four, five and six months after date to the order of H. T. Cushwa & Bro., at the Citizen's National Bank of Martinsburg, W. Va., which notes were still held by said Cushwa & Bro., at the time the account was taken in this cause, and were filed before said commissioner by H. T. Cushwa, with his deposition. Now, what was the effect of executing these three negotiable notes, which do not appear to have been discounted or used in any manner by the payees, but remain in their possession? Can they be regarded as a payment and extinguishment of the debt they represent? In the case of *Bank* v. *Good*, 21 W. Va. 495, Snyder, Judge, delivering the opinion of the Court, said: "It is well settled in both Virginia and this State that a note will not be regarded as an absolute extinguishment or payment of a precedent note or pre-existing debt, unless it be so expressly agreed, whether the note received was that of one previously bound, or of a stranger;" citing *Poole* v. *Rice*, 9 W. Va. 73; *Lazier* v. *Nevin*, 3 W. Va. 622; *Miller* v, *Miller*, 8 W. Va. 550. See, also, *Dunlap's Ex'r* v. *Shanklin*, 10 W. Va. 662, where it is held that: "Giving a receipt or taking a note with security from the purchaser, or taking the note of a third party, specifying in either case that it is

for the purchase money, will not, while the title remains in the vendor, be an extinguishment of the vendor's lien, unless the purchase money has been actually paid, * * * Taking a note from a debtor, or a note of a third party, is no discharge of the debt, unless it is expressly agreed between the creditor and debtor that it is an absolute payment thereof. * * * A receipt may be explained or contradicted by parol evidence." Now, it clearly appears by the evidence that although the receipt dated August 15, 1896, signed by H. T. Cushwa & Bro., acknowledged that they had received of the Auburn Wagon Company, three thousand four hundred and eighty dollars and ninety-three cents for bill of August 13th, in full for contract and extras, except mailing office, said amount was not in fact paid, but that the three notes above mentioned were executed for the same. The account of H. T. Cushwa & Bro. appears to have been filed with the clerk of the county court of Berkeley, and sworn to, on the 14th of October, 1896, and the last of said notes executed by the wagon company to Cushwa & Bro, became due on February 13, 1897, and suit to enforce said mechanic's lien might be brought, under the statute, until the 13th of April 1897 ; and it has been held that, though a note is payable after the expiration of the time limited by law in which a lien must be filed, it is not waved, if it be pay. able before the time in which the action must be brought for its enforcement, for a menchanic is allowed to file the lien before his note is due. In the case of *Ashdown* v. *Woods,* 31 Mo. 465, it is held that "the acceptance of the notes of the debtor, payable after the time granted by the statute for filing a mechanic's lien, and maturing before the sxpiration of the time limited, for bringing suit, will not bar a suit and recovery upon the lien, if the notes are produced to be surrendered at the trial." See, also, *McMurray* v. *Taylor,* 30 Mo. 2b3 ; also, *Schmidt* v. *Gilson,* 14 Wis. 514, in which it is held that "a mechanic does not lose his lien under-the statute for work done upon a building by taking the note of the owner of the building, payable within the time allowed by law for commencing an action to enforce the lien"; and in *Goble* v. *Gale,* 7 Blackf. 218, it was held that "a mechanic's lien for work done is not waived by taking

his employer's note for the money due for the work, and giving a receipt in full for such money, the note not being paid."

It is contended that the debt due or to become due to the Improvement, Loan and Building Association, secured by the trust deed, for thirty-seven thousand four hundred and ninety-seven dollars was entitled to priority over said mechanic's lien. Is this position correct? In considering this question, we notice first the fact that on February 18, 1896, a written contract was entered into between the Auburn Wagon Company and H. T. Cushwa & Bro., with elaborate specifications thereto annexed, for the erection of certain buildings on its lots in the town of Martinsburg, in accordance with said specifications, with certain minor exceptions, for the sum of twenty-one thousand nine hundred and fifty dollars, which exceptions were to be paid for as extras, which was, and must be considered, an entire contract. It is shown by the testimony that H. T. Cushwa & Bro. began the work under this contract on February 10, 1896, and completed it September 4, 1896. The work was pushed right along, and said Cushwa, when asked what amount of work and material in money was done and furnished prior to March 9, 1896, answered that they were excavating and building the foundation during that time, which was a part of the contract. The deed of trust in favor of the building association above mentioned was admitted to record in Berkeley County on the 9th of March, 1896. Did the fact that this trust deed was executed and recorded after the appellants had commenced work under said contract entitle said trust deed to priority over said mechanic's lien? If such be the case, the mechanic's lien law affords very little protection to the contractor in this State, since the party who employs him to erect buildings upon his lands can defeat his lien, when the work is almost completed, by executing a deed of trust on the property. The right to execute and record such trust deed one day or one month, as in this case, after the work has commenced under the contract, implies the right to create such trust deed, and take priority over the mechanic's lien, at any time while the work is in process of completion. Our statute (Code, p. 652, s. 2) provides that every mechanic, etc., who shall perform any work or fur-

nish any material, etc., shall have a lien to secure the payment of his contract, upon such house or other structure, and the lien authorized by this section shall have priority over any other lien created by deed or otherwise on such house or structure subsequent to the time when such labor shall have been performed or material furnished. Cushwa & Bro. were proceeding with their contract. The wagon company had notice that they were performing it, and that every day's work in pursuance of the contract entitled them to a lien for their services. Would it be a fair construction of the statute to hold that said wagon company, by executing said trust subsequent to the time one month's labor had been performed under the contract, would give the *cestui que trust* priority over said mechanic's lien? I think not: and it is certain that few contractors would rely for protection on the mechanic's lien, in this State, if such was the proper construction. It surely never was the intention of the Legislature that a contractor should have no right to a mechanic's lien for work and material furnished until after he completed his contract. In the case of *Building Co.* v. *Saucer*, 45 W. Va. 483 (31 S. E. 965)—Brannon, President, delivering the opinion of the Court, said (speaking of the builder): "He may go on to work, and he has his lien from its commencement, or when he began furnishing material; and the statute gives him a lien over any other creditor whose liens arise after his lien commences, without any recordation, because the law gives notice to the world that the mechanic's lien attached to the building, which lien he may enforce by filing it sixty days after completion."

In the case of *Manufacturing Co.* v. *Brockmyer*, 18 W. Va. 591, Green, Judge, delivering the opinion of the Court, says: "The statute itself provides expressly that such lien shall have priority over every lien created by deed or otherwise on such house," etc,, 'subsequent to the time when such labor shall be performed, and material furnished.' This would, it seem to me, by its clear language, give a lien from the time when the labor commenced on the buildings, or the matarial commenced being furnished, though, by the third section, thirty days after the labor ceased, or the material has ceased to be furnished,

are given in which to record the lien. Thus for a time it is a secret lien. The mechanic's lien, under our statute, begins from the day when the work is begun, according to what I think is its proper meaning." See, also, *Dunklee* v. *Crane*, 103 Mass. 470.

Now, as between the Auburn Wagon Company and Cushwa & Bro., the mechanic's lien of the latter surely attached from the time they commenced performing the contract, and after that said wagon company could only convey the property to a trustee subject to the mechanic's lien, as they could only convey the property as they held it. In 15 Am. & Eng. Enc. Law, p. 191, it is said : "Mechanic's and laborers asserting a lien upon real property for their work, and claiming priority over mortgagees and others who have acquired interests in the property, must furnish strict proof of all that is essential to the creation of the lien; and this rule requires them to prove when the work was commenced, the character of the work, and when it was completed;" citing *Bank* v. *Winslow*, 3 Minn. 87, (Gil. 43) and *Davis* v. *Alvord*, 94 U. S. 545, in which last named case Justice Field, speaking of the mechanic's lien law, says ; "The statute was designed to give security to those who, by their labor, skill, and materials, add value to the property by a pledge of the interest of their employer for their payment; and for that purpose it subordinates all other interests acquired subsequent to the commencement of their work, although no notice that a lien may even be claimed is required, except within sixty days after the work is completed." See *Bank* v. *Dashiell*, 25 Grat. 616.

It is clearly shown in this case that the work was commenced under this contract more than a week before the deed of trust was recorded. By commencing the work, Cushwa & Bro. acquired a vested right, which could not be overthrown or superseded by said deed of trust. To hold otherwise would be to hold that a deed of trust executed and recorded one day before the work was completed would take priority over the contractor's entire claim. I therefore hold that our statute must be construed to intend that the lien attaches when the performance of the work commences. In view of the authorities above cited,

and looking to the facts proved in the record, I am of opinion that the court erred in holding that the mechanic's lien claimed by H. T. Cushwa & Bro., four thousand one hundred and two dollars and ninety-one cents, was not properly audited as a mechanic's lien, and that it should have been audited as a general debt of said wagon company, and sustaining the first exception taken by the Improvement, Loan and Building Association, and others to the commissioner's report, for the causes assigned in said exception. Said claim of Cushwa & Bro. should have been held as a mechanic's lien, to take its place as such, in point of priority, in the account reported by said commissioner. For these reasons the decree complained of must be reversed, and the cause remanded.

Dent, Judge, (*dissenting*):

I respectfully dissent from the majority of the Court in this case, for the reason that they hold, in effect, by point 5 of the syllabus, that the clause in section 2, chapter 75, of the Code, to-wit: "The liens authorized by this and the next preceeding section shall have priority over any lien created by deed or otherwise on such house or other structure and the lots on which the same are erected subsequently to the time when such labor shall have been performed or material or machinery furnished," is equivalent to the words, "The lien created by this act shall be preferred to every other lien or incumbrance which shall have attached upon said property subsequent to the time at which the work was commenced or the material furnished, and no incumbrance upon the land created after the making of the contract for the erection of a building upon such land shall operate upon the building erected until the lien in favor of persons doing the work or furnishing the materials shall have been satisfied," contained in the statutes of Virginia, Minnesota, and Montana, and I might add Missouri, New Jersey, Maryland, and Connecticut, and other states and territories having similar provisions to the Virginia statute. Some states begin the lien from the making of the contract. *Bell* v. *Cooper*, 26 Miss., 650. Statutes have changed from time to time in

the different states, so that the decisions thereunder vary accordingly. But this is the first case that I have been able to find that holds that the words "shall have performed" mean "commenced." Nor can any such definition be found in the dictionaries or law books. The Court seems to place the misuse of the word "performed" on the legislature. The presumption is against the assumption of such legislative ignorance, and the law says that words used in a statute must be given their common and ordinary meaning, unless the contrary plainly appears from the context. To do otherwise is to legislate, and not to construe. In this case the Court has manifestly exceeded its judicial powers, and amended the statute so as to make it read, "when such labor shall have been commenced," instead of, " when such labor shall have been performed." The authority under which the Court justifies itself in doing this is from those tribunals where the governing statutes use the word "commenced," and not the word "performed," to-wit, Virginia (*Bank* v. *Dashiell*, 25 Grat. 616), and Montana (*Davis* v. *Alvord*, 94 U. S. 545), and the mere dictum of JUDGE BRANNON, in the case of *Building Co.* v. *Saucer*, 45 W. Va. 483, (31 S. E. 965), not supported by any authority, except a general reference to section 215, Phil. Mech. Liens, and not necessarily involved in a decision of that case. It is hard to conceive why reference was not made to authorities from Massachusetts, Missouri, New Jersey, Connecticut, Maryland, District of Columbia, and various other states where the statutes use the word "commenced," instead of the word "performed," unless the court grew tired of the subject, or considered the last authority quoted as of such binding and unimpeachable conclusiveness—a *ne plus ultra*—that it would be a matter of wasted labor to look any further. In Phil. Mech. Liens, s. 215, it is said: "The time when the lien is to be considered as acquitted depends essentially upon the provisions of the law authorizing this remedy. * * * The period fixed has not been uniform in the several states. The larger number have established [this is by statute, and not by decision of court] the commencement of the work upon the premises as the moment when the rights of the mechanic are to be protected; others have made the

filing of a notice, in some public office of the jurisdiction where the building is situate, of intention to hold a lien, the time when it will attach ; while a few have adopted the date of contract or the completion of the work." Looking for the true definition of the word "performed," we find it means "completed, furnished or finished," but never "commenced." So our State really belongs to the last class above mentioned, as to the priority of mechanic's liens and those created by deed or otherwise. In 15 Am. & Eng. Enc. Law, p. 80, it is said : "The time when a mechanic's lien is acquired depends upon the provisions of the law authorizing the remedy;" and on page 88, "The rights of a mortgagee are paramount to those of the mechanic, where the mortgage attaches before the house was erected, altered, or repaired ;" and page 91, "Where the lien attaches when the structure is completed, a mortgage executed after the commencement and before the completion of the work is paramount to the lien." In the case of *Williams* v. *Chapman*, 17 Ill. 423, in construing a somewhat similar statute, it was held : "The mechanic's lien will attach from the delivery of the materials upon the premises, and the use of them by connecting them to the freehold, not from the date of the contract." Scates, C. J., in his opinion, on page 425, says : "In *McLagan* v. *Brown*, 11 Ill. 526, it was held that the lien under this statute will attach and commence upon the performance of the work or delivery of the materials. The same principle is, in effect, asserted, and the reason for it alluded to, in the case of *Gaty* v. *Casey*, 15 Ill. 192, where in answer to an objection to a contract made in St. Louis having an extraterritorial effect to create a real estate lien in Illinois, the court said : "It is not the contract which creates the lien under the statute, but it is the use of the materials furnished upon the premises, the putting them into the building and attaching them to the freehold, which entitles the party furnishing materials to a lien upon the premises to extent of their value." * * * This is the most equitable construction, if the rights of others are to be regarded. While we will give the act a liberal interpretation, to preserve the rights of mechanics and material men, we are not called upon to destroy all other rights in order to foster and give efficien-

cy to every claim and assertion of this secret incumbrance.
By the delivery of material, or the bestowal of labor upon
the land means are offered others to know something of
such claims for the eighteen months that may follow with-
in which the right must be asserted. Were the promise
or contract for the material or labor the ground of lien, or
even the bare commencement to deliver the one or bestow
the other, no one could possibly have any means of knowl-
edge, and the time of completion and payment might pro-
long this uncertainty for years. We think the lien put
upon the right and reasonable ground,—the existence of a
debt; for the one or the other by performance of the bene-
fit contracted for the land, and it is immaterial whether
that debt be due or not." The lien, under our statute, is
not given by reason of the contract, but because and for
labor performed and material furnished, and hence cannot
attach to the property until the labor is performed and
the material furnished, goes, into and becomes a fixed
part of, the realty. As long as it is not a part of the realty,
no lien attaches by reason thereof. Such was the holding of
the supreme court of Arkansas, under a precisely similar
statute, except that the reservation now under discussion
was not contained in the Arkansas statute; and yet the
court reached the conclusion in perfect accord with this
reservation, while the court with much plausibility could
have arrived at the same conclusion our Court now arrives
at, for the very same reason that this reservation which is
in our statute was not in the one under construction. *Mc-
Cullough* v. *Caldwell,* 5 Ark. 237. In that case it was held
by the court : "The lien of a mechanic for work and labor
or materials furnished commences with the completion of
the work and delivery of the materials under the contract
with the proprietor."

Section 2, chapter 75, Code, provides, in its first clause,
that "every mechanic, builder, artisan, workman, laborer,
or other person who shall perform any work or labor upon
or furnish any material or machinery for constructing, al-
tering, repairing or removing a house, mill, manufactory
or buildings, appurtenances, fixtures, bridge or other
structure, by virtue of a contract with the owner or his
authorized agent, shall have a lien to secure the payment

of the same, upon such house or other structure and upon the interest of the owner in the lot of land on which the same may stand or to which it may be removed." This clause, standing alone, could not be construed otherwise than that the lien was to attach to the property only after the labor was performed or the materials furnished; for it attaches by reason of the performance of the labor and the furnishing of the material, and is in its nature a purchase-money or vendor's lien, and follows the labor and material into the property. The affixing the one fixes the other. "The lien attaches, and the right to enforce it accrues, at the completion of the contract, and when the labor has been fully performed." *Cummings* v. *Wright,* 72 Ga. 767. To render this emphatic, and place it beyond question, our statute then provides for the priority of the mechanic's lien over any lien created by deed or otherwise, "subsequently to the time when such labor shall have been performed or material or machinery furnished." Here the time is fixed, and the past perfect tense is used, denoting completion; yet this Court says these words mean subsequent to the time when such labor shall have commenced. Verily, the power of construction is great, when the statute can be made to mean just the opposite from what it says. There is neither end nor beginning. Both are ends, and it is possible to be at both ends at the same time. If such construction be correct, how useless it was for the statutes of Virginia, Minnesota, Montana, and other states to provide "that the lien created by this act shall be preferred to every other lien or incumbrance which shall have attached upon said property subsequent to the time at which the work was commenced." The legislature meant just what it said,—that the lien should attach from the time the work shall have been performed, or, in short, completed. The law does not give notice to the world that the mechanic's lien attaches until the labor be performed or the material or machinery be furnished. What labor the mechanic may have done, or the material or machinery he may have furnished, the law gives notice of, but not what he is to do or furnish. The idea that the mere working on a foundation, getting out stone, being notice that an immense factory was to be built by those doing this work, is entire-

ly too broad. "The fact that some of the appellants were at work on the propery and material being furnished by others at the time the mortgage was executed was not actual notice of the existence of the lien. It was notice that the property was being repaired, but gave no evidence to the purchaser of the nature of the contract between the employer or the employes, or that the money for the labor and materials furnished was unpaid. It is the lien the purchaser must have notice of, and not the fact that the property is being improved." *Foushee* v. *Grigsby*, 12 Bush. 75.

In the present case the Improvement, Loan and Building Company had a prior equitable lien on the property involved, of which Cushwa & Bro. had actual notice, the object of such lien being for the purpose of securing money to pay for building on the property. With full knowldge of such lien, Cushwa & Brother contracted to put up such buildings, and this lien is referred to, and certain provisions made in relation thereto in the contract. They did a small amount of work in getting out stone for the foundation, when, on the 9th of March, 1896, the prior equitable lien became · effective by recordation. They went on and completed their contract by the 1st of September. It amounted, including extra work, to twenty-two thousand nine hundred and eighteen dollars and ninety-five cents, on which they received, presumably out of the money furnished by the improvement company, nineteen thousand and thirty dollars and fifty-three cents, leaving a a balance unpaid, which was really not due until the 1st of August, of three thousand eight hundred and eighty-eight dollars and forty cents, and which, with interest added, will probably eat up the whole sum for which the lot and buildings sold, and leave nothing to be applied on the large debt of nearly forty thousand dollars due and coming to the improvement company; and this Court, in giving a strained and unwarranted construction to the statute, permits this to be done, although plainly unjust and inequitable. The only excuse given for this is that the rights of the mechanic must be protected, although subsequent, both in equity and in law, to the person who furnishes the money, without which no building could have been built, or

no building contract entered into. There is no injustice done to the mechanic in limiting this law to its true meaning as indicated by the language used. The mechanic gets his lien when the labor is performed and the material furnished, and as it is performed and furnished, and the *bona fide* mortgagee gets his lien from the time the mechanic has notice thereof; so that the mechanic need not perform further labor, or furnish further material, unless he wishes to, in subjection to the trust lien. But it is said this may defeat his contract. That may be true. The object of the statute was not to preserve his contract, or give him a lien therefor, or clothe him by reason thereof with a vested interest in the property; but it was simply to provide a lien for him on the property for the actual work performed or material furnished, subject, however, to any lien on the property of which he has notice at the time he performs the work or furnishes the material. It is said judgment and other liens would intervent and interfere with, if not destroy, his contract, and he would be prevented from carrying the same out. It is just as well that he should lose his contract, when he saves his labor and material, as that other lienors, who might be just as needy as he, should lose their debts. It is said that liens might attach of which he had none but constructive notice, and, if he went on and completed his contract, he would lose his labor and material, by reason of no fault of his, as he could not watch the records to see what might thereon be recorded. A court of equity would treat his lien as a purchase-money lien, to the extent of the labor and material furnished, and prior to any lien acquired during the performance of his contract, of which he had not actual notice. Such secret liens would be subject to the same rule which takes land from the true owner thereof, who stands by and suffers a mechanic to go ahead and do work thereon under the belief that it belongs to some one else. 15 Am. & Eng. Enc. Law, p. 65; *Coleman* v. *Goodnow*, 36 Minn. 9, (29 N. W. 338); *Donaldson* v. *Holmes*, 23 Ill. 85; *Higgins* v. *Ferguson*, 14 Ill. 269; *Hulsman* v. *Whitman*, 109 Mass. 411. A judgment lien is always limited to the interest of the judgment lien debtor in the property, while a trust lienor could not stand by and allow another, ignorant of his holding, to bestow

labor and material on the trust subject, unless such trust was either prior to any rights the mechanic may have in the property, or he have actual notice thereof at the time the labor is performed or material furnished, for the giving of such secret trust would be a fraud against the mechanic. And a court of equity will apportion the property between the mechanic and mortgagee, *Preston* v. *Senora Lodge*, 39 Cal. 116; *Butler* v. *Thompson*, (W. Va,) 31 S. E. 960, and *Lawyer* v. *Barker*, *Id.* 964, decided at this term. It said that the mechanic's lien would be broken into intervening liens, and the matter would be hard of adjustment. Nothing is too hard for a court of equity to adjust so as to clothe each party seeking its aid with his true equitable rights. It fails only when it administrators prove unequal to the task it imposes upon them, and the trust and confidence it reposes in them. Equity, law, and right are on the side of the improvement company in this controversy, and yet it fails of justice for the reason that a majority of the Court construes the words "shall have performed" to mean "commenced," instead of "completed."

In the amendment of the Court's opinion in this case since the rehearing was applied for, attention is, with some degree of exultation, directed to the dictum of Judge Green, in the case of *Manufacturing Co.* v. *Brockmyer*, 18 W. Va. 591, in which he says, in commenting on a similar statute : "This would, it seems to me, by its clear language, give a lien from the time when the labor commenced on the buildings, or the material commenced being furnished, though, by the third section, thirty days after the labor ceased or the material has ceased to be furnished are given within which to record the lien. Thus for a time it is a secret lien. The mechanic's lien begins from the day the work is begun, according to what I think is its plain meaning. Similar statutes have been generally so construed. See *Wells* v. *Canton Co.*, 3 Md. 234." It is undoubtedly true that the lien begins when the work commences but it only extends so as to cover the work and labor actually performed and material furnished, and as performed and furnished, and does not extend to cover the whole contract in advance of its performance. If this is the meaning of Judge Green—and his language plainly

allows such construction—then he was right, and the construction of his language by the Court is wrong. If, however, the Court is right in its construction, then undoubtedly Judge Green dropped into the same error as his learned successor in the *Suncer Case.* The only authority relied on by him (being *Wells* v. *Canton Co.* cited) clearly shows this, as this was a decision under a Maryland statute (Laws 1838. c. 205), dissimilar to ours, in that it by its terms gave a lien to the mechanic from the commencement of his work for the whole work and material furnished. Judge Eccleston, in his opinion, says: "The ninth section of which [meaning the statute], and the first section of the second act [Laws 1845, c. 176], give preference to liens on buildings for work and materials over all liens or incumbrances attaching subsequently to the commencement of the buildings"—being directly contrary to the provision in our statute. This plainly illustrates the many errors that creep into judicial decisions by the hasty, inconsiderate, and ill-advised dictums of judges on points not necessary for them to determine; but which afterwards become traps for the unwary, and form a foundation of future erroneous decisions, to the destruction of the logical harmony of our system of common-law jurisprudence, and the denial of justice and the perpetration of wrong. And such dictum, when once launched, continues on its chaotic course until some succeeding court, by a recurrence to fundamental principles, stays its further progress by disapproving all decisions founded thereon. Year by year the number of overruled and disapproved cases is augmented, many of which might have been avoided, had their learned authors given the law as it is written, and not their opinions as to what it ought to be. It is the law that litigants want, and not the dictum of one judge founded on the dictum of some other judge. The I's and my's could be erased from all opinions without detriment thereto, except to record a dissent from palpable error, or they could be so plainly expressed as to show a mere opinion as to what the law should be, in opposition to what it really is. This would prevent them from being misleading from the mere fact of the learned source of their utterance. The Court, in its amended opinion, also refers to

the case of *Dunklee* v. *Crane,* 103 Mass. 470, as a case in point, wherein it is held that "a mechanic's lien, under Gen. St. c. 150, has priority over a mortgage executed after the making of a contract under which a lien is claimed under a statute which expressly provides that the mechanic shall have a lien from the date of his contract prior to any subsequent mortgage." It is useless to comment on such inapplicable authority. The Court had better confess that its decision has nothing to support it except its *obiter dictum* as to what the law should be, and not as it is written, than to base its conclusion on authorities that have no possible application. "Open confession is good for the soul." And no one who has access to the Reports is going to be misled by irrelevant references thereto.

There is another matter which detracts greatly from the equity of the conclusion reached in this case. H. T. Cushwa, one of the members of the firm of Cushwa & Bro., was president of the Improvement, Loan and Building Association on the 10th day of December, 1895, and as such president he entered into and signed a contract with T. C. Wood; president of the Auburn Wagon Company, which contract was acknowledged by said Cushwa on the 17th day of January, 1896, and by which the said building association agreed to loan said wagon company the sum of forty thousand dollars, to secure which the deed of trust in controversy was afterwards given and recorded. This contract was also recorded on the 13th day of March, 1896, before any considerable proportion of the work had been done by Cushwa & Bro., on their contract, and the part for which they now claim a lien was not completed until months afterwards. This contract contains the following provision, to-wit : "The said party of the first part hereby covenants and agrees to and with the said party of the second part that it will loan to said party of the second part the sum of forty thousand dollars in installments as follow : Five thousand dollars on the 15th day of February, 1896, less the dues on said four hundred shares of stock from the 16th day of December, 1895, and the sum of one thousand dollars advanced by the said party of the first part to pay the purchase money to W. T. Stewart, guardian, etc., for the pracel of land in said city of Martinsburg, ly-

ing on the northwestern side of Race street, adjoining the
right of way of the Cumberland Valley and Martinsburg
Railroad Company, upon which the said party of the sec-
ond part is to locate its plant; five thousand dollars on the
16th day of March, 1896 ; provided, however, that if, at
the time the said two installments become payable, the
work on the buildings to be erected for said plant shall not
have progressed sufficiently to warrant the payment of
such installment, then the time of the payment of the
same shall be deferred until such time as the progress
on said buildings shall so warrant, and all subsquent pay-
ments hereinafter set forth shall be made at regular inter-
vals every thirty days thereafter: five thousand dollars
April 16th, 1896; five thousand dollars May 16th, 1896 ; five
thousand dollars June 16th, 1896 ; five thousand dollars
July 16th, 1896; five thousand dollars August 15th, 1896 ;
and five thousand dollars September 16th, 1896, the last
six installments, however, being made subject to the con-
ditions affecting the time of payment of the said first and
second installments as above provided,"—thus showing a
clear intention that the money loaned was to be used to pay
for the buildings, and was not to be paid over until it was
secured by the completion of the buildings as they pro-
gressed. By the building contract of H. T. Cushwa & Bro.,
the buildings were to be completed on the 1st of May 1896,
at which time twenty-five thousand dollars of the loan
would have remained in the control of the association ;
and if H. T. Cushwa, president of such association, had
adbered to the provisions of the loan contract, no part of
the twenty-five thousand dollars would have been paid over
until the buildings were completed, but, because his firm
was behind on the contract, he authorized the association
funds to be paid over, in violation of the condition on which
it was loaned, to be used for other purposes than pay-
ment for the buildings. The last installment was not to be
paid until the 16th of September, 1896, which was four
months after the buildings were stipulated to be complet-
ed, one month after H. T. Cushwa & Bro. settled with the
wagon company, and accepted its negotiable notes, payable
four, five, and six months after date, to-wit: August 15,
1896, and fifteen days after they finally completed the

work for which they claim a mechanic's lien ; and yet the said H. T. Cushwa concealed from the association, of which he was still the president, the fact that his firm was going to file and claim a mechanic's lien, and actually allowed and joined in paying, as such president, to said Auburn Wagon Company, said installment of five thousand dollars, which should have been applied to the payment of the amount of such mechanic's lien.   By accepting the deferred notes of the company, he placed it out of the firm's power to sue until they were due, concealed the fact of the claim from the association, and led the other officers thereof to believe that it had been satisfied, and then, as president of said association, authorized the payment of the last installment to the company.   This is certainly a breach of trust, for which, if the mechanic's lien were coming to him individually, it would justify the court in postponing it, if prior in right, to the trust deed of the association.   Not only this, but as president of the association, he neglected to have the trust deed or contract on record until after his firm had commenced work under their building contract, with full notice of such deed of trust and loan contract.   He virtually had the money in his own hands which was intended to and should have gone to the extinguishment of the mechanic's lien ; but, having extended credit to the company, he placed it out of the power of his firm to demand payment thereof, and allowed the money to be applied in fraud of the association, without giving it any notice, while he was its trusted executive officer.   Its rights he gave away without its knowledge, but was careful to preserve his own. His acts and knowledge in the premises were the acts and knowledge of the firm.   And when he authorized the money which was intended by the association to be used in payment for the firm's indebtedness to be paid to the wagon company, and allowed the same to be applied otherwise than to the extingishment of the mechanic's lien, and accepted deferred negotiable notes in lieu of such money, he thereby bound his firm to the release of its prior right, if any it had, over the association trust lien.   17 Am. & Eng. Enc. Law, pp. 1038, 1069.   The association trusted him with its business.   The firm did likewise.   The association never authorized him to permit the application of its

loan to the wagon company to be used for any purpose other than the extinguishment of the debt on its security until such debt was fully satisfied, as appears from the contract signed by him as its president; yet, as a member of the firm, he had a right to release the firm's debt, postpone its payment, or to direct the funds applicable thereto to be applied otherwise in such manner as to completely bind the firm, but not to the injury or loss of the association. With both he must act honorably, and within the scope of his authority in his double capacity. His duty as president of the association was to see that its funds were applied to relieve its security from prior liens, and this duty he could not legally disregard, as he had no other alternative. His duty to his firm was to see that this money was applied on its indebtedness as soon as the work was completed. This duty he could legally disregard, postpone the indebtedness, and allow the money to be otherwise used, and thus bind the firm. This he did do, and the firm should be held bound by his action, and its lien should be postponed to the trust lien. This is both just and equitable. The innocent stockholders were made to suffer by the decree of the court, while he who had it in his power and should have protected their rights is rewarded for breach of the trust and confidence placed in him. He saved himself; others he should, but would not, save. His gains, therefore, should have been used to cure their losses. The commencement of a duty is not the performance thereof, the court to the contrary notwithstanding, but, to be rightly performed, it must be fully completed; and in this case this means that the loss should be rightly placed on the shoulders of that one of two parties whose conduct, innocent or fraudulent, occasioned it. This is an elementary principle of equity. The firm, through its agent, H. T. Cushwa, knowingly permitted the money intended to satisfy its lien to be otherwise dispose of and used, to the injury of the association; and therefore, the firm should bear the loss, and not the association.

*Reversed.*